**Dawud Halisi MALIK, Plaintiff–Appellant,**

**v.**

**Neal BROWN, Defendant–Appellee.**

No. 91–36320.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1993.

Decided Feb. 7, 1994.

Mary Megan McLemore, Preston, Thorgrimson, Shidler, Gates & Ellis, Seattle, Washington, for the plaintiff-appellant.

Pat L. DeMarco, Assistant Attorney General, Olympia, Washington, for the defendant-appellee.

Before: BEEZER, HALL, Circuit Judges, and CONTI,* District Judge.

\* The Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation.

1. "Dawud Halisi Malik" is thus both the prisoner's legal and his religious name. For purposes

**OPINION**

BEEZER, Circuit Judge:

Dawud Halisi Malik brought suit under 42 U.S.C. §§ 1983 and 1985, alleging that prison officials violated his statutory and constitutional rights by refusing to process mail and documents in which the plaintiff used his religious name. Plaintiff claims he was subjected to disciplinary action for using his religious name in addition to his committed name. The district court granted summary judgment in favor of defendant prison officials, and Malik appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.

I

Malik was committed to the Washington State Department of Corrections under the name David Washington Riggins. He converted to the Sunni Muslim faith in 1978 and legally changed his name to Dawud Halisi Malik.[1] For the next ten years, however, Malik continued to use the name Riggins.

Malik began using his religious name in 1988. He testified that "when I started truly practicing the religion as it's to be practiced, that's when I started using my name to live up to the attributes of my name.... Dawud means David, and to me it means the [Prophet] David.... Halisi means genuine, sincere, and for real. Malik means king and a believer." In 1990, Malik gave officials at Clallam Bay Corrections Center a copy of the court order changing his name from Riggins to Malik. Prison officials informed Malik that he would not be allowed to either send or receive mail unless he used his committed name. The policy in effect at the time provided:

> Letters may be typewritten, printed, or legibly written in longhand and must be concluded with the inmate's full signature and address at the end of each letter. Name, number and address must appear

of this opinion, we use the term "religious name" to refer to "Dawud Halisi Malik," and the term "committed name" to refer to "David Washington Riggins."

in the upper left hand corner of the envelope.

Field Policy No. 400–7, ¶ F. By memorandum dated July 23, 1990, Malik was informed that the Field Policy required him to use his committed name on all correspondence.

On July 23, 1990, Malik attempted to have several letters mailed. The letters were returned to Malik later that day. He alleges these letters contained both his committed and religious names in the upper left hand corner. Prison officials assert that the letters were returned because they included only his religious name.[2]

Malik eventually received a "general infraction" stating that he had "refused to comply with directives concerning the U.S. Mail." He was punished with six days cell confinement and eight hours of extra duty. Malik's appeal of the infraction was denied. Subsequently, Malik received an additional general infraction stating that Malik "is not to use his Islamic name [sic] only his legal name on outgoing mail, etc." He was sanctioned with ten days cell confinement.

Malik then filed a *pro se* complaint seeking declaratory judgment, injunctive relief, and monetary damages. After Malik filed his suit, Superintendent Neal Brown issued Administrative Bulletin CBCC 90–089, which amends CBCC 450.100 ¶ F[3] as follows:

> Letters may be typewritten, printed or legibly written and must be concluded with the inmate's full signature and address at the end of each letter. The inmate's committed name, number and address must appear in the upper left hand corner of the envelope.
>
> The names under which inmates were committed to the custody of the Department of Corrections must be used on all incoming and outgoing mail. Inmates may use another name, but only in addition to their committed name.

Brown explained that the change clarified an "ambiguity" in the policy, and conceded that the original policy could be construed to permit use of a name other than the inmate's committed name.

The district court adopted the Report and Recommendation of the Magistrate Judge and dismissed the action. The Report and Recommendation concluded, first, that there was no evidence that Malik's use of his religious name stemmed from "sincere religious belief." Second, the Report and Recommendation concluded that the prison's requirement that an inmate use his committed name was reasonable.

## II

We review de novo the district court's grant of summary judgment. *Kruso v. International Tel. & Tel.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

The Report and Recommendation adopted by the district court concluded that Malik's use of his Islamic name was a "personal choice," rather than a matter of religious belief. This conclusion was based on Malik's failure to use his religious name for ten years after he converted to Islam and changed his name legally. A "use it or lose it" approach to religious exercise does not square with the Constitution.

■ "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Among the rights prisoners possess is the right to the free exercise of religion, subject to limitations justified by the considerations underlying our penal system. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

---

**2.** Defendants contend that Malik later added his committed name to the return addresses, and that his claim that both names were included when he attempted to mail the letters is false. Several of the exhibits are consistent with either Malik's or the officials' assertions. One exhibit is consistent only with Malik's assertion.

**3.** Field Instruction CBCC 450.100 superceded Field Policy 400–7, ¶ F, but included the same language.

■ To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. "First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to 'so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity.'" *Callahan v. Woods,* 658 F.2d 679, 683 (9th Cir.1981) (quoting *Theriault v. Carlson,* 495 F.2d 390, 395 (5th Cir.), *cert. denied,* 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974)). Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Id.* (citing *Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972)); *Johnson v. Moore,* 948 F.2d 517, 520 (9th Cir.1991) (claims must be religious in nature). Determining whether a claim is "rooted in religious belief" requires analyzing whether the plaintiff's claim is related to his sincerely held religious belief. *Callahan,* 658 F.2d at 683–84.

■ There is nothing in the record before us which challenges the sincerity of Malik's Muslim faith. The only evidence in the record on the issue is Malik's testimony concerning when and why he began using his Muslim name. Nor does Brown dispute that Malik's name change was related to his conversion to Islam. We agree with other circuits that the adoption of Muslim names by converts to the Islamic faith is an exercise of religious freedom. *See, e.g., Salaam v. Lockhart,* 905 F.2d 1168, 1170 n. 4 (8th Cir.1990) ("It is common practice for a [Muslim] convert to change his name as the Koran provides, and the former Anglo name is thought to be a badge of a spiritually unenlightened state and a relic of slavery."), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991); *Ali v. Dixon,* 912 F.2d 86, 90 (4th Cir.1990) ("the first amendment protects an inmate's right to legal recognition of an adopted religious name" (citation omitted)); *Felix v. Rolan,* 833 F.2d 517, 518 (5th Cir. 1987) ("The adoption of Muslim names by inmates practicing that religion is generally recognized to be an exercise of both first amendment speech and religious freedom.").

Instead of determining whether Malik's claim was related to his sincere religious beliefs, the district court determined that Malik's use of his Islamic name was a "personal choice" because he had not felt compelled to use the name at the time of his conversion. The Supreme Court has indicated, however, that religious claims that have developed over time are protected to the same extent as those that occur in a moment. *Hobbie v. Unemployment Appeals Comm'n of Florida,* 480 U.S. 136, 144 n. 9, 107 S.Ct. 1046, 1050 n. 9, 94 L.Ed.2d 190 (1987) ("So long as one's faith is religiously based at the time it is asserted, it should not matter, for constitutional purposes, whether that faith derived from revelation, study, up-bringing, gradual evolution, or some source that appears entirely incomprehensible."); *Ehlert v. United States,* 402 U.S. 99, 103, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1970) (conscientious objector claims not defeated merely because they were "late in crystallizing").

Brown does not suggest, nor did the district court find, a secular reason for Malik's decision to change his name. Malik's name change is indisputably related to his conversion to Islam. The ten-year gap between when Malik legally changed his name and when he began to use it exclusively does not attenuate Malik's free exercise claim. We hold that Malik has stated a valid free exercise claim.

### III

The Report and Recommendation adopted by the district court further found that Malik's suit failed as a matter of law. We view the evidence in the light most favorable to the non-moving party, and must decide whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

### A

■ We first consider whether the prison regulations impinged on Malik's right to exercise his religious faith. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it reason-

ably related to legitimate penological interests." *Shabazz*, 482 U.S. at 349, 107 S.Ct. at 2405 (citing *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261). We consider several factors in determining whether a regulation is reasonable. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261 (citation omitted). Second, we consider whether there are alternative means of exercising the right that remain open to prison inmates. *Id.* at 90, 107 S.Ct. at 2262. Third, we consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* (citation omitted).

The district court focused on the first *Turner* factor, analyzing only whether the state's interest in continued use of an inmate's committed name served a legitimate penological objective. We agree that the state has a legitimate interest in continued use of an inmate's committed name. But we see no legitimate penological interest in preventing Malik from using *both* his religious and his committed names. We agree with other circuits addressing this issue that allowing an inmate to use both his religious and committed names "is a reasonable middle ground between absolute recognition of the plaintiff's Muslim names and the prison interests of order, security and administrative efficiency." *Felix v. Rolan*, 833 F.2d at 519; *see also, Salaam v. Lockhart*, 905 F.2d at 1170; *Ali v. Dixon*, 912 F.2d at 90.

Application of the other *Turner* factors supports our holding. Using both the religious and the committed name is a satisfactory alternative means for an inmate to freely exercise his religion. The existence of this "obvious, easy alternative" suggests that a rule permitting the use only of the inmate's committed name is an exaggerated response.

Nor does the use of both names have a significant adverse impact on prison administration.

Malik was entitled to use both his religious and his committed names on correspondence and other documents. Malik's right to free exercise is violated by any prison regulation to the contrary or by contrary enforcement of an ambiguous regulation.

## B

■ We now consider whether summary judgment was improper because there are genuine issues of material fact in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Brown contends that Malik has insisted that he be allowed to use his Islamic name exclusively. We cannot agree.

Malik claims he is not seeking to prevent prison officials from using his committed name; rather, he claims he has been wrongly prevented from using his religious name along with his committed name. Malik's Amended Complaint alleges that prison officials refused to allow him to use both his religious and his legal name. Malik alleges, for example, that Kaatz, a Notary Public, refused to affix a certificate of acknowledgment to a document including "both [Malik's] birth name and Islamic name." Amended Complaint, ¶ 3.1. He alleges also that Sukert refused to witness legal mail containing both Malik's Islamic name and his "old name" on the envelope. ¶ 3.6.

■ Summary judgment on the issue of whether prison officials improperly denied Malik the right to use both his religious and his committed names was improper. The facts are disputed. Malik asserts that he attempted to mail materials including both names. The record includes evidence supporting Malik's assertion. Prison officials claim that Malik added his committed name to the envelopes after they were returned to him. On a motion for summary judgment, the district court may not weigh the evidence to determine its truth; the court's role is limited to determining whether there is a genuine issue for trial. *Anderson*, 477 U.S.

at 249, 106 S.Ct. at 2510. Summary judgment was inappropriate.

## IV

Malik's adoption of a Muslim name is an expression of his religious faith. He is entitled to use both his religious and his committed names on correspondence, on legal documents, and in his daily affairs. Whether defendant prison officials violated this right and improperly disciplined Malik is a disputed matter that must be resolved at trial.[4]

REVERSED and REMANDED.

---

**4.** Brown asserts, but does not argue, that prison officials are protected by qualified immunity from Malik's constitutional claims. We express no conclusion on this issue because the record is not fully developed. We note, however, that claims for injunctive and declaratory relief are unaffected by qualified immunity. *Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1472 (9th Cir.1993).