Dawud Halisi MALIK, a/k/a David W. Riggins, Plaintiff–Appellee,

v.

Neal BROWN, Defendant,

and

Carol L. Moses, Assoc. Supt.; Kathy Kaatz, C.U.S.; Sue Kinsinger, C.P.M.; Mark Crewson, C.U.S.; Virginia Carter, Sgt.; Joan Smith, Mail Rm. Personnel; John Tice, Sgt.; Dick Frank, Sgt.; Nancy Hill, Corr. Officer; Monica Sukert, Corr. Officer; Richard Rooney, Corr. Officer; John Fritzpatrick, Sgt.; Marie Norman, Corr. Officer; S. Giesenoff, c/o CBCC; Schouviller, Lt., Hearing Officer; Chase Riveland, Defendants–Appellants.

No. 94–35529.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1995.

Decided Nov. 28, 1995.

Martin E. Wyckoff, Assistant Attorney General, Olympia, Washington, for defendants-appellants.

Megan McLemore, Preston, Gates & Ellis, Seattle, Washington, for plaintiff-appellee.

Before: EUGENE A. WRIGHT and BRUNETTI, Circuit Judges, and GONZALEZ,* District Judge.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

In this qualified immunity case we decide whether a prisoner's First Amendment right to use his religious name in conjunction with his committed name on outgoing mail was clearly established in 1990. We also determine whether a prison notary public violated a clearly established law when she refused to attest to a document on which the inmate's signature did not match his identification.

### I.

Dawud Halisi Malik brought suit pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that prison officials violated his statutory and constitutional rights by refusing to process mail and notarize documents on which he used his religious name. When he was first incarcerated his name was David Riggins. In 1978, he legally changed his name to Dawud Halisi Malik after converting to Sunni Islam. He began to use his new name in 1988.[1]

---

* Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation.

1. The facts of this case are set out in more detail in *Malik v. Brown*, 16 F.3d 330, 331–32 (9th Cir.1994), *mandate recalled*, 65 F.3d 148 (9th Cir.1995).

This is the second appeal that these parties have brought before us. We previously reversed a grant of summary judgment in favor of the prison officials, holding that Malik's use of his Muslim name was an expression of his religious faith, that he was entitled to use both his religious and his committed names, and that whether defendants violated this right was a factual dispute to be resolved at trial. *Malik v. Brown,* 16 F.3d 330, 335 (9th Cir.1994) (*Malik I*). We expressly did not reach the issue of whether defendants should be accorded qualified immunity. *Id.* at 335 n. 4.

On remand, the prison officials again moved for summary judgment, contending that they were entitled to qualified immunity. They also moved for summary judgment, contending that Malik's claims for prospective relief were moot. The district court denied the motions. The prison officials appeal.

■ A denial of qualified immunity is appealable immediately. *Neely v. Feinstein,* 50 F.3d 1502, 1505 (9th Cir.1995); 28 U.S.C. § 1291. The denial of summary judgment as to prospective relief, however, is not a final order and is not inextricably intertwined with the issue of qualified immunity. *See Swint v. Chambers County Comm.,* — U.S. —, —, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995). We have no appellate jurisdiction to review it.

## II.

■ The qualified immunity doctrine protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity requires "a two-part analysis: 1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). We review de novo a denial of qualified immunity. *Id.*

■ To be clearly established the law must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). It is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness was apparent in light of preexisting law. *Id.* "[I]n the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established" for qualified immunity purposes, *Capoeman v. Reed,* 754 F.2d 1512, 1514 (9th Cir.1985), "'including decisions of state courts, other circuits, and district courts.'" *Vaughan v. Ricketts,* 859 F.2d 736, 739 (9th Cir.1988).

### A. Outgoing Mail

Defendants argue that at the time Malik was punished for violating the prison's mail rules, only a single decision from another circuit, *Salaam v. Lockhart,* 905 F.2d 1168, 1170 (8th Cir.1990) (*Salaam II*), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991), was sufficiently on point to establish the law. Because *Salaam* was decided only one month before the alleged violations, they contend that the law was not *clearly* established. A review of pre-*Salaam* cases, however, shows otherwise.

■ For at least 16 years, federal courts have been wrestling with inmates' use of religious names. The cases have consistently supported three propositions. First, an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name. *See, e.g., Salaam II,* 905 F.2d at 1170; *Felix v. Rolan,* 833 F.2d 517, 518 (5th Cir.1987); *Barrett v. Virginia,* 689 F.2d 498 (4th Cir.1982). Second, an inmate cannot compel a prison to reorganize its filing system to reflect the new name. *See, e.g., Barrett,* 689 F.2d at 503; *Akbar v. Canney,* 634 F.2d 339, 340 (6th Cir.1980), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981). Third, in states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names. *See, e.g., Rahman v. Stephenson,* 626 F.Supp.

886 (W.D.Tenn.1986); *Salahuddin v. Cough-lin*, 591 F.Supp. 353 (S.D.N.Y.1984). Several of these opinions address, at least indirectly, the topic of inmate mail.

In *Masjid Muhammad–D.C.C. v. Keve*, 479 F.Supp. 1311 (D.Del.1979), decided 11 years before the events in question here, the district court denied a prison warden qualified immunity where he refused to deliver mail addressed only to the inmate's religious name. The court held that the warden should have been aware that preventing mail delivery involves "particularly sensitive" topics such as "mail censorship and religious expression." *Id.* at 1327. And in *Salahud-din v. Carlson*, 523 F.Supp. 314 (E.D.Va. 1981), the district court held that a prisoner had stated a cause of action where he alleged that prison officials refused to recognize his new name in various situations, including failing to deliver mail addressed to his new name.

In 1982, the Fourth Circuit held that prison officials could not categorically refused to accord legal recognition to inmates' newly adopted religious names. *Barrett*, 689 F.2d at 503. Although prisons were not required to reorganize their filing systems, the court noted that "correctional authorities may not properly condition the receipt of services or benefits upon [a prisoner's] waiving [his] right [to use a legally adopted name]. For example, it would be unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name." *Id.*

In 1984, the Southern District of New York dismissed a prisoner's case where the prison refused to process his mail. *Cough-lin*, 591 F.Supp. at 359. The court dismissed the case because the inmate had not changed his name legally, although he could have done so.[2]

In 1986, the Seventh Circuit generally addressed religious name changes by inmates, and specifically addressed whether prison officials were immune from liability for having refused to recognize an inmate's legal name change. *Azeez v. Fairman*, 795 F.2d 1296, 1301–02 (7th Cir.1986).[3] The majority assumed without discussion that Azeez's First Amendment rights were violated by the prison authorities' failure to acknowledge his religious name. *See id.* at 1299. The court held, however, that at the time of the violations *in 1981*, the law had not clearly established inmates' rights to recognition of religious names. *Id.*

In 1987, the Fifth Circuit recognized that "[t]he adoption of Muslim names by inmates practicing that religion is generally recognized to be an exercise of both first amendment speech and religious freedom." *Felix*, 833 F.2d at 518.

 Most of these cases involved the application of the *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) standard for deciding the constitutionality of prison regulations. In *Procunier*, the Supreme Court held that a prison restriction on inmates' First Amendment rights could be justified only if it "further[s] an important or substantial governmental interest unrelated to the suppression of expression," and the limitation is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 413, 94 S.Ct. at 1811. In 1986, the Supreme Court modified this standard by holding that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The standard is judged by four

---

2. Between 1984 and 1986, the Western District of Tennessee twice addressed prison religious name use. Neither decision involved inmate mail. In 1985, *Mujihadeen v. Compton*, 627 F.Supp. 356 (W.D.Tenn.1985), held that prisoners' First Amendment rights were not violated by being required to carry ID cards with *both* their committed and legal names. The next year, the court again recognized a prisoner's First Amendment interest in changing his name to reflect his religious beliefs. *Rahman*, 626 F.Supp. at 888.

The court, however, dismissed the motion because the inmate had failed to change his name legally.

3. The district court opinion in *Azeez* was also published and concludes that the "a/k/a" designation is "a reasonable middle ground between absolute recognition of the plaintiff's Muslim names and the prison interests of order, security and administrative efficiency." *Azeez v. Fairman*, 604 F.Supp. 357, 364 (C.D.Ill.1985).

considerations: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it"; (2) whether inmates have alternative available means of practicing their religion; (3) the impact of accommodation on the prison; and (4) the existence of "obvious, easy alternatives" to the regulation. *Malik I,* 16 F.3d at 334 (quoting *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262); *see also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) ("prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights.").[4]

Although the test has changed, the results in prisoner religious name cases have generally continued to be consistent with earlier cases. *See Ali v. Dixon,* 912 F.2d 86, 90 (4th Cir.1990) ("Both before and after *Turner,* several courts including our own, have expressed approval of the addition of a prisoner's new name as a means of accommodating the prisoner's free exercise rights and the prison's interests in administrative continuity.").[5]

Two post-*Turner* cases address issues closely related to ours. In *Salaam v. Lockhart,* 856 F.2d 1120, 1123 & n. 1 (8th Cir. 1988) (*Salaam I* ) the Eighth Circuit considered the rights of inmates to have their new names on their uniforms and on incoming mail. The court noted that the "a/k/a desig-

nation" is a well-recognized, reasonable alternative to prisons' committed name policies. The court further commented that several decisions have recognized an inmate's constitutional right to receive mail under his religious name. *Salaam I* invoked the fourth prong of the *Turner* test whereby the existence of an "obvious, easy alternative" to a prison's practice suggests that it could be unreasonable. *Id.* at 1123. On appeal after remand, *Salaam II,* 905 F.2d at 1170, the court again relied on the fourth prong of *Turner* to hold that the prison was required to deliver mail addressed to the religious name and allow the prisoner to have the religious name on his clothing in addition to his committed name.

These cases demonstrate that prisons are required to take simple measures to accommodate prisoners' First Amendment rights. Allowing a prisoner to put his religious name next to his committed name on outgoing mail is an "obvious, easy" accommodation. *See Malik I,* 16 F.3d at 334. It is simpler than delivering incoming mail addressed to the prisoner by his religious name or putting the prisoner's religious name on his name tag or clothing, as *Salaam II,* 905 F.2d at 1170, required. The burden on the prison is so small that in *Malik I* we found that there was no legitimate penological interest in preventing use of the religious name with the committed name on outgoing mail. 16 F.3d at 334.

Because the issue of religious name changes has been litigated extensively and

---

**4.** The standard has changed once again. In 1993, Congress enacted the Religious Freedom Restoration Act (RFRA). Under RFRA, the government cannot substantially burden the free exercise of religion unless it serves "a compelling governmental interest; and ... is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000bb. As the dissent agrees, RFRA is not relevant to the analysis of qualified immunity because it was passed after the alleged violations took place. Although RFRA has a retroactivity clause, *id.* § 2000bb–3(a), we do not believe the clause applies to the liability of individual officers. Congress would have spoken more clearly if it had intended the clause to abrogate qualified immunity. *See Carter v. Derwinski,* 987 F.2d 611, 615 (9th Cir.) (en banc) ("We may insist on a clear statement of congressional intent before interpreting a statute in a way that compromises especially weighty

values."), *cert. denied,* —— U.S. ——, 114 S.Ct. 78, 126 L.Ed.2d 46 (1993); *cf. Werner v. McCotter,* 49 F.3d 1476, 1481 (10th Cir.) (finding officials entitled to qualified immunity for conduct antedating enactment of RFRA without discussing the retroactivity clause), *cert. denied,* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995).

**5.** One exception may be *Matthews v. Morales,* 23 F.3d 118, 119 (5th Cir.1994) (per curiam), where the court, applying *O'Lone,* upheld a Texas statute forbidding prisoners from changing their legal names while incarcerated. But that case involved a fundamentally different question from the one before us. Malik already has changed his name legally and seeks only the recognition of it by prison officials—an easier accommodation.

courts have consistently recognized an inmate's First Amendment interest in using his new, legal name (at least in conjunction with his committed name), we find that the law was clearly established in the absence of binding Ninth Circuit precedent.

 Defendants argue that even accepting Malik's version of the facts, a reasonable officer could believe that his conduct was lawful. If the law is clearly established, an official may still prevail if he can show that a reasonable officer could have believed his conduct was lawful. *Act Up!*, 988 F.2d at 871. Malik alleges that he was punished for refusing to comply with the mail policy. A reasonable officer would not believe that it was proper to punish an inmate for mailing out correspondence with both his committed name and his religious name on it. Consequently, defendants are not entitled to summary judgment based on qualified immunity regarding the outgoing-mail issue.[6]

### B. Notary Services

Malik contends that a prison notary refused to notarize a legal document on which Malik's signature did not match his prison identification. Wash.Rev.Code § 42.44.080 provides:

> (4) In witnessing or attesting a signature, a notary public must determine, either from personal knowledge or from satisfactory evidence, that the signature is that of the person appearing before the notary public and named in the document.

> . . . . .

> (8) A notary public has satisfactory evidence that a person is the person described in a document if that person: (a) is personally known to the notary public; (b) is identified upon the oath or affirmation of a credible witness personally known to the notary public; or (c) is identified on the basis of identification documents.

It is uncontested that Malik presented for notarization a legal document listing both his committed and legal names, at least on the first page. On the signature page only his legal name was listed and signed. When the notary realized that the signature did not match Malik's prison identification, she confiscated the page, which she had already signed, and refused to notarize the document.

 Based on these facts, we find no basis to deny the notary qualified immunity. She acted according to state law. She would have violated the law if she had notarized the document for one whom she did not know and whose identification did not match the signature. There is no evidence that Malik offered to show any alternative identification. We find no cases involving use of religious names in connection with notary services. There is no clearly established law that says that she should have acted differently.

### III.

We hold that the law regarding a prisoner's First Amendment right to use his new legal name in conjunction with his committed name was clearly established in 1990. We affirm the district court's finding that defendants are not entitled to summary judgment as to qualified immunity on plaintiff's claim for First Amendment violations in the processing of his mail. We grant qualified immunity on the issue of notary services.

**AFFIRMED IN PART; REVERSED IN PART and REMANDED FOR TRIAL.**

BRUNETTI, Circuit Judge, dissenting:

I do not agree that in 1990 the law was clearly established that the prison officials could not punish Malik for using his religious name on outgoing mail, and I respectfully dissent.

This appeal presents a purely legal question: Are the prison officials entitled to immunity from suit "insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known[?]" *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Mitch-*

---

**6.** There is a factual dispute as to whether Malik was punished simply for using his religious name on outgoing mail, or for failing to put his committed name next to it. On summary judgment this dispute must be viewed in Malik's favor, but we do not foreclose the possibility that the prison officials at trial could establish that their version of the facts is correct and so avoid liability.

*ell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Addressing this legal question, we assume Malik's version of the facts is accurate. *See id.* at 528, 105 S.Ct. at 2816–17 (stating that appellate court reviewing denial of claim for qualified immunity need not consider the correctness of plaintiff's version of the facts).

Malik claims that in July 1990 prison officials denied him use of mail and notary services because the materials he sought to mail and have notarized included his religious name. Malik bears the initial burden of showing that his right to use his religious name on outgoing mail and in conjunction with notary services was clearly established, after which the prison officials would bear the burden of proving that their conduct was reasonable. *See Shoshone–Bannock Tribes v. Fish & Game Comm'n,* 42 F.3d 1278, 1285 (9th Cir.1994). Malik has not met his burden.

In his brief, Malik principally relies on the Fifth Circuit's analysis in *Felix v. Rolan,* 833 F.2d 517 (5th Cir.1987), to argue that the clearly established law at the time of the alleged violations prohibited the prison officials from denying him use of his religious name on outgoing mail. In *Felix,* the Fifth Circuit recognized that "[t]he adoption of Muslim names by inmates practicing that religion is generally recognized to be an exercise of both first amendment speech and religious freedom." *Id.* at 518. Specifically, the *Felix* court stated that the " 'a/k/a' designation for the receipt of privileges and record keeping is a reasonable middle ground between absolute recognition of the plaintiff's Muslim names and the prison interests in order, security and administrative efficiency." *Id.* at 519 (internal quotation marks omitted). Malik's reliance on *Felix* would be persuasive if the Fifth Circuit's reasoning in *Felix* was still the final word on this subject.

After the Fifth Circuit announced the *Felix* opinion, however, the Supreme Court altered the test for evaluating the constitution-

ality of prison regulations. In *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987), the Supreme Court held that "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights." *See also Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987). Because the *Felix* court relied on the old standard, rather than the new standard articulated by the Supreme Court in *O'Lone,* the *Felix* decision was not enough to clearly establish the law regarding prisoners' religiously motivated name changes when prison officials' conduct at issue in this case occurred. *See Matthews v. Morales,* 23 F.3d 118, 119 (5th Cir.1994) (declining to rely on *Felix* because of new test announced in *O'Lone,* and holding that under the new *O'Lone* test, prisoner's rights were not violated by statute prohibiting inmate from changing his name); *Muhammad v. Wainwright,* 839 F.2d 1422, 1425 n. 6 (11th Cir.1987) (doubting that "at the present time [1987] ... such action by prison officials is obviously unconstitutional.").

Since the relevant time period for this case, the law has again changed. In 1993, Congress passed the Religious Freedom Restoration Act (Act), which overruled *O'Lone* in part. *See Werner v. McCotter,* 49 F.3d 1476, 1479 (10th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995). The Act limits the government's ability to substantially burden a person's exercise of religion to cases in which the government demonstrates that the burden serves "a compelling governmental interest; and ... is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000bb to 2000bb–4 (Supp.V 1993). This test applies to "*all* cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1) (emphasis added). *See also Malik I,* 16 F.3d 330 (9th Cir.1994), *mandate recalled,* 65 F.3d 148 (9th Cir.1995). Specifically, "[a]s applied in the prison and jail context, the intent of the act is to restore the traditional protection afforded to prisoners to observe their religions which was weakened

[sic] by the decision in *O'Lone v. Estate of Shabazz.*" S.R. No. 111, 103d Cong., 1st Sess. 9–11 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1898–1901. Since the Act was not passed until after the conduct at issue in this case occurred, however, it is not relevant to my analysis about whether the law was clearly established at that time.

The Act and the opinion in *Malik I* clearly establishes the law on this issue for future cases in the Ninth Circuit. However, in 1990, when Malik was denied the use of his religious name on outgoing mail, the law was not clearly established. I find the prison officials are entitled to qualified immunity as a matter of law and, accordingly, the district court erred by denying their summary judgment motion with regard to Malik's claims that the officials refused to process mail and notarize documents on which Malik used his religious name.