**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 27 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MADYUN ABDULHASEEB, a/k/a
Jerry L. Thomas,

        Plaintiff-Appellant,

v.

JAMES L. SAFFLE, Director of
Oklahoma DOC; STEVE HARGETT,
Warden of LARC; BOBBY BOONE,
Warden of MACC; DERRAL
ALTOM, Case Manager Supervisor;
C. T. HURD, Unit Manager;
MALAYA BROOKS, Principal;
HELAN J. WOODALL, Post Office
Supervisor a/k/a Helen Woodall;
KAMRON HARVANEK,
Administrative Assistant to Warden
Boone; OKLAHOMA DEPARTMENT
OF CORRECTIONS; EDWARD
EVANS, West Central Regional
Director of Oklahoma DOC; JACK
HAWKINS, Chaplain at Davis
Correctional; ED STOLTZ, Religious
Coordinator for Oklahoma DOC;
GARY ALLEN, Volunteer Religious
Coordinator on A & R; DOLORES
RAMSEY, Designee of the Director;
ALBERT E. SHULTS; MACC
CHAPLAIN,

        Defendants-Appellees.

No. 01-7103
(D.C. No. 98-CV-296-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

*Introduction*

Appellant Madyun Abdulhaseeb was, for several years, the Imam, or elected spiritual leader, of the Muslim prison community at the Lexington Correctional Center (LCC). While at LCC, he filed staff requests and grievances concerning what he perceived as disparate treatment of the Muslim community as compared with the Christian inmate community. He was then transferred to the Mack Alford Correctional Center (MACC), where he filed this civil rights suit, pursuant to 28 U.S.C. § 1983. In his amended complaint, appellant alleged religious discrimination at LCC, retaliatory transfer, and further retaliation at MACC. After defendant s moved for summary judgment , attaching a voluminous *Martinez* report, [1] the district court issued its first dispositive order (First Order).

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] *See Ketchum v. Cruz* , 961 F.2d 916, 918 n.2 (10th Cir. 1992) (citing *Martinez v. Aaron* , 570 F.2d 317 (10th Cir. 1978)).

Therein, the court granted summary judgment to defendant s and/or dismissed eleven of appellant's claims completely, and two claims in part.

After further briefing and a status conference, the court issued a scheduling order setting deadlines for discovery, motions, and exhibits, and calendaring the remaining claims for trial in May of 2001. In response to defendants' second motion to dismiss, the district court issued its second dispositive order (Second Order), dismissing the remaining claims, *i.e.,* the ones set for trial, as frivolous.

Appellant challenges these two rulings. We have jurisdiction over the appeal by virtue of 28 U.S.C. § 1291. [2] We review the district court's grant of summary judgment to defendant s *de novo* , using the same standards as the district court. That is, we view the evidence and reasonable inferences drawn therefrom in the light most favorable to appellant and determine whether there are genuine issues of material fact and whether defendant s are entitled to judgment as a matter of law. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.* , 165 F.3d 1321, 1326 (10th Cir. 1999) (citing Fed. R. Civ. P. 56(c)). We review the district court's dismissal of claims as frivolous for an abuse of discretion only, considering appellant's pro se status and whether the district

[2] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-3-

court inappropriately resolved genuine issues of material fact or applied erroneous legal conclusions. *See Denton v. Hernandez*, 504 U.S. 25, 33-34 (1992). Because appellant proceeds pro se, we construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998). After our review of the record on appeal and the parties' briefs in light of the above standards, we conclude that several of appellant's claims were improperly dismissed; therefore, we reverse the district court's rulings in part. Appellant's amended complaint contained nineteen numbered counts; we will use these numbers in addressing the claims on appeal.

*Claims Affirmed*

Count Two, part three. In this subpart of Count Two, appellant alleged that the warden at LCC, defendant Hargett, discriminated against the LCC Muslim community when he directed all inmates to attend a Christian yard event featuring speaker Bill Glass. The district court initially let this claim stand. *See* First Order at 6. However, the court subsequently concluded that appellant had failed to exhaust his administrative remedies with regard to this claim, and dismissed it as frivolous. *See* Second Order at 2-3, 9. We review *de novo* the conclusion that appellant failed to exhaust his administrative remedies. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). On appeal, appellant contends that he filed a grievance on this claim and also asserts that defendant s did not include copies

-4-

of all his grievances in the *Martinez* report. He further generally argues that defendant s intentionally frustrated his attempts to exhaust his claims, in part by failing to respond to his grievances.

Regardless of whether the district court could properly dismiss this part of Count Two for failure to exhaust in light of these allegations, we conclude that this claim should have been dismissed for failure to allege any injury resulting from the alleged conduct. In a response to interrogatories, appellant admitted that he did not attend the Bill Glass event. Further, he has not alleged retaliation in any form as a result of his lack of attendance. Appellant cannot raise claims on behalf of other inmates. [3] *See Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986). Therefore, dismissal of this claim was proper, although we disagree with the district court that it was frivolous.

Count Three . Appellant alleged that warden Hargett and others had formed a company operating at LCC that hired only white Christian inmates. The district court dismissed this claim in its initial ruling, concluding that appellant had not alleged personal injury. First Order at 7. We agree that the claim should have been dismissed because our review indicates that appellant was trying to raise this

---

[3] Appellant did seek to have this case certified as a class action. That request was denied by the district court due to appellant's pro se status. He does not appeal that ruling.

claim on behalf of another Muslim inmate who was denied a job.      *See Cotner* , 795 F.2d at 902.

Counts Six, Seven, and Nine   .  In Count Six, appellant alleged that Muslim volunteers were not invited to the annual Volunteer Appreciation Day at LCC, although they had been before warden Hargett's tenure.  Count Seven alleged that Muslim literature at LCC was subject to a strict review procedure, while Christian literature was not.  In Count Nine, appellant contended that, although Muslim fund-raisers were disallowed, warden Hargett's niece was allowed to sell food at the LCC visiting room, and that a Muslim inmate was forced to help with these sales, including the sale of pork sausage.  The district court properly dismissed these claims for lack of personal injury.  First Order at 9, 10, 11-12.  Appellant did not claim that he should have been invited to the Volunteer Appreciation Day, nor did he allege facts which connected the review of Muslim literature or the visiting room food sales to his own constitutional rights.  Again, he cannot raise these claims on behalf of others in the Muslim community.      *Cotner* , 795 F.2d at 902.

Count Eight .  Appellant alleged that literature which was racist and derogatory towards Islam was being disseminated at the Lexington Assessment and Reception Center (LARC), a facility adjoining LCC.  The district court initially allowed this claim to stand because      defendant s had failed to address it in

their first summary judgment motion or in the *Martinez* report. First Order at 11. Ultimately, however, the district court concluded that the claim had not been exhausted, and dismissed it as frivolous. Second Order at 2-3. As with the third part of Count Two, discussed above, we question this ruling in the face of allegations that appellant did file both a staff request and a grievance on this issue and that prison officials returned grievances or failed to answer them in an effort to deny him access to the grievance process and to prevent him from exhausting his complaints. Nonetheless, we conclude that his claim was properly dismissed because appellant's allegations do not implicate personal involvement with literature disseminated at LARC. He apparently had no access to LARC and alleged no personal injury. We do not agree, however, that this claim was frivolous.

Counts Ten and Sixteen. In Count Ten, appellant alleged a conspiracy between warden Hargett and others to deprive him of the educational programs he had pursued at LCC by transferring him and by thwarting his efforts to seek access to educational programs while at MACC. Count Sixteen asserted that Hargett conspired with defendant Evans in connection with appellant's transfer to MACC and its consequences. The district court concluded that appellant's allegations of conspiracy were conclusory and noted that appellant had no right to be incarcerated at a specific facility or to educational programs. First Order

at 13, 17. We agree, and also note that appellant has alleged no discriminatory basis for the denial of educational benefits outside of his claim of retaliation, which is addressed below. These claims were properly dismissed.

Count Eleven . Appellant contended that his constitutional rights were violated by the prison's requirement that, on official forms, he use the name under which he was first incarcerated. He legally changed his name in 1990. The district court dismissed this claim in its initial order, relying on the balancing test set out in *Turner v. v. Safley* , 482 U.S. 78 (1987). First Order at 15. We agree. While appellant may have a First Amendment interest in using his changed name, *see Malik v. Brown* , 71 F.3d 724, 727 (9th Cir. 1995), that does not trump the prison's interests in security and efficient record-keeping. *See Felix v. Rolan* , 833 F.2d 517, 519 (5th Cir. 1987). It is clear from the record that appellant is allowed to use his changed name, so long as he includes his incarcerated name on official forms. This claim was correctly dismissed.

Counts Thirteen and Seventeen . Count Thirteen asserted that a Muslim community fund-raiser to support LCC's college program was disallowed, while other fund-raisers were approved. In Count Seventeen, appellant contended that defendant Hawkins diverted and misappropriated money raised by the Muslim community at LCC. The district court dismissed these claims in its initial ruling,

concluding that they did not rise to the level of constitutional violations.  First

Order at 16-17, 18.  We agree that these claims were correctly dismissed.

Count Fifteen .  This claim, alleging that appellant was transferred to

MACC for exercising his right to file grievances, was properly dismissed as

duplicative of Counts One and Ten, discussed below.

Count Nineteen .  Appellant asserted that   defendant  Allen discriminated

against Muslim inmates at LCC because he and his volunteers were allowed to

provide Christian services at LARC, but would not provide Muslim services.  The

district court first ruled that this claim survived      summary judgment   because

defendant s had failed to address it in their     summary judgment   motion.  First

Order at 18.  However, it later concluded that Allen was not a state actor for

§ 1983 purposes and ruled that appellant failed to show how the alleged conduct

violated his constitutional rights.  Second Order at 7-8.  We agree that there were

no allegations or evidence of appellant's personal involvement at LARC or any

effect on appellant as a result of the alleged discrimination.  This claim was

correctly dismissed, although, again, we disagree with the district court's

conclusion that it was frivolous.

*Claims Reversed*

Count One . Appellant contended that he was transferred from LCC to MACC in retaliation for raising issues about disparate treatment of the Muslim community. Relying on defendant Hargett's affidavit, the court stated that appellant was transferred not for exercising his First Amendment rights, but for "his frequent, disruptive allegations of religious discrimination." First Order at 4. Using the *Turner* balancing test, the court concluded that appellant's transfer was "reasonably related to legitimate penological interest." *Id.* The district court erred in dismissing this claim.

It is clear that the district court relied on warden Hargett's affidavit regarding the motivation for appellant's transfer. Motive is a factual question. *See Crespin v. New Mexico* , 144 F.3d 641, 652 (10th Cir. 1998). Because appellant alleged facts which contradict the warden's statement on this point, the court's grant of summary judgment was error. The court cannot make credibility determinations on summary judgment . *Anderson v. Liberty Lobby, Inc.* , 477 U.S. 242, 255 (1986).

We conclude that appellant has stated a cognizable claim for retaliation which survives summary judgment . He alleged that his transfer came on the heels of his third grievance–that same day, actually. The other five grievances listed by the district court were filed after appellant's transfer in an attempt to exhaust his

claims. *See* First Order at 3. In a petition for injunction accompanying his original complaint, appellant also averred that, when he was transferred, he was told that he had "worn out his welcome" and that warden Hargett wanted him "gone yesterday." R., Vol. I, doc. 3. Appellant stated that Hargett failed to respond to his first three grievances and that grievances he filed at MACC were returned to him on baseless technical grounds. Construing these allegations in a light most favorable to appellant, they create a genuine issue of material fact about the motive underlying his transfer to MACC. Therefore, the district court's dismissal of this claim is reversed.

Count Two, parts one and two. In the first two parts of this claim, appellant asserted that Muslim inmates at LCC were not allowed to distribute Islamic literature or provide religious services at LARC, although Christian inmates were allowed to do so. He also contended that warden Hargett waived certain rules so that all inmates could participate in a fund-raiser sponsored by the Christian Men's Association (CMA), but a Muslim fund-raiser was not granted such leniency. He also noted that Muslim services were cancelled during another Christian event because, he alleged, the warden did not want competition with that event. As with Count One, the district court appears to have relied on the warden's affidavit and the *Martinez* report in discussing the pertinent facts. *See* First Order at 5-6.

-11-

But the crux of the district court's ruling on this claim was its conclusion that appellant had not asserted a personal violation of his constitutional rights in connection with this claim. *Id.* We disagree. Appellant is asserting an equal protection claim here, evident from his comparison of the Muslim community to the Christian community at LCC. In the equal protection setting, "injury in fact" may be demonstrated by allegations that a litigant is being treated differently than others on an impermissible basis, such as religion. The Supreme Court has stated that the denial of equal protection *is itself* the injury required to bring such a claim. "The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of [a] barrier, not the ultimate ability to obtain the benefit." *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). All appellant must allege to properly state an equal protection claim is that he was personally denied equal treatment on the basis of his religion. *See Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 441 (10th Cir. 1990) (citing *Allen v. Wright*, 468 U.S. 737, 755 (1984)).

Further, although appellant's claims are generally worded on behalf of the entire Muslim community at LCC, we assume, construing his pleadings liberally, that the Muslim community includes himself, unless otherwise indicated. As to this claim specifically, appellant alleged that he participated in several requests to

be allowed to distribute Islamic literature at LARC, and filed a grievance on the issue. He contended that the Muslim community, assumably including himself, was denied that opportunity while Christians were not. Similarly, he asserted that Muslims were discriminated against when the warden treated a Christian fund-raiser more leniently than a Muslim one and cancelled Muslim religious services during a Christian event. In an equal protection claim, appellant need not show that distributing literature is central to his own religious observance or that the warden's treatment of the fund-raiser or cancellation of Muslim services somehow infringed upon his religious practices. Nor need he demonstrate that he would have necessarily distributed the literature himself, only that he was denied the opportunity to do so, which he sought, on the basis of his religion. *See City of Jacksonville*, 508 U.S. at 665 (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 280-81 n.14 (1978)). Again, while appellant cannot assert the claims of others, his allegations state an equal protection violation. The district court's grant of summary judgment to defendants on parts one and two of Count Two is reversed.

Count Four. Here, appellant alleged that warden Hargett cancelled an ongoing Muslim fund-raising project–the sale of "oils"–in retaliation for the Muslim community's attempts to advise the ACLU about religious bias at LCC. He also contended that fund-raising projects of other groups were not restricted

and noted that Muslim communities in other prison facilities were allowed to sell "oils." Initially, the district court appeared to credit the warden's statement in his affidavit that he stopped the "oils" fund-raiser pursuant to Oklahoma Department of Corrections (ODOC) policy, but declined to grant summary judgment because defendant had failed to address appellant's contention about "oils" sales at other prisons. First Order at 8. In its second ruling, however, the court dismissed this claim due to lack of personal participation by the warden, based on his affidavit. The court concluded that appellant's claims of conspiracy to deny the sale of "oils" were conclusory.

We agree that any claim of conspiracy was not supported by sufficient factual allegations. However, we disagree with the district court's dismissal of this claim. As with Count One, appellant's allegations create a factual dispute about the warden's motive for cancelling the "oils" fund-raising project. As with the first two parts of Count Two, appellant has sufficiently stated an equal protection violation. He characterized the fund-raiser as "our project," *see* R., Vol. I, doc. 7 at 3A, and filed both a staff request and grievance on the issue, demonstrating a level of personal involvement. The district court's ruling on this claim is reversed.

Count Five . Appellant complained that LCC hired only Christian inmates to work in the chapel–specifically, members of the CMA–and that they were

-14-

allowed greater access to the chapel than other religious groups. He alleged he was promised a job in the chapel which was later denied by the warden. The district court first noted that appellant had alleged no personal injury resulting from the alleged disparity in access, but stated that he raised a cognizable claim with respect to the chapel job. First Order at 9. In its subsequent ruling, the court again appeared to rely on warden Hargett's affidavit. Second Order at 4-5. The court acknowledged that prison officials could not deny appellant a job on a prohibited basis such as race or religion, but concluded that appellant "does not allege he has been deprived of employment on the basis of any suspect classification." *Id.* at 5. The court dismissed the claim as frivolous.

Our review of the record indicates that, while appellant did not, in a single sentence, state that he was denied the chapel job due to his religion, liberal construction of his pleadings as a whole clearly indicates that this was the nature of his claim. In the petition for injunction filed with his original complaint, appellant claimed that the warden "allowed only Christians to work in the chapel," R., Vol. I, doc. 3, App. A at 2, and made numerous other references to discrimination in hiring based on religion. In response to defendant s' second dispositive motion, appellant contended that, although the warden did not ordinarily participate in decisions concerning the chapel, he consistently did so whenever another official made a decision in favor of a Muslim inmate. *See id.*,

-15-

Vol. III, doc 117, at 5.  In light of these and other similar statements throughout the record, it is overwhelmingly obvious that appellant's discrimination claim about the chapel job was based on religion.  We conclude that appellant has stated an equal protection claim, on his own behalf, for the denial of prison employment on account of his religion.  The district court's ruling on this claim is reversed.

Count Twelve .  Appellant claimed that the Muslim community at LCC was being denied monthly family night visits, which the Christian community enjoyed.  Family night visits must be sponsored; the CMA sponsors the Christian family nights.  Appellant requested sponsorship by     defendant  Hawkins, a chaplain, who denied the request.  Appellant also alleged that he was told that clubs and organizations were allowed only one annual function in the visiting room, but contended that the CMA held numerous events there throughout the year.  The district court initially denied    summary judgment   on this claim because   defendant s had not addressed appellant's claim about requesting sponsorship for Muslim family night visits.  First Order at 16.  However, the court dismissed the claim as frivolous in its subsequent ruling, based on the conclusion that appellant was asserting the rights of the Muslim community–and not himself–and therefore had shown no injury.  As discussed above, we conclude that appellant was raising his own rights (along with those of the rest of the Muslim community at LCC which he cannot assert) when, as here, he filed grievances about the issue.  Again,

because appellant need not demonstrate a particularized injury beyond his allegations that he was treated differently because he is a Muslim, we conclude that he has stated an equal protection violation. The district court's dismissal of this claim is reversed.

Counts Fourteen and Eighteen. Appellant contended that the ODOC, warden Hargett, and defendant Stoltz have acted to establish Christianity as the official ODOC religion. In Count Fourteen, he alleged that LCC officials openly advocated Christianity and that they failed to ensure that equal time, money, or resources are given to the Muslim community. His pleadings and affidavits contain numerous specific factual allegations which support this claim. In Count Eighteen, appellant asserted that Stoltz maintained an all-Christian chaplaincy, solicited and appropriated funds for Christian programs, and targeted only Christian inmates for outreach and consultation. The district court declined to grant defendants' first motion for summary judgment on these claims, pointing out that the *Martinez* report did not address them. First Order at 17, 18. In its second ruling, the district court combined Counts Fourteen and Eighteen, noting in particular defendants' subsequent contentions denying liability or control. The court dismissed the claims as frivolous because appellant "failed to allege he was deprived of his constitutional right to practice his religion." *Id*. at 7.

The district court misunderstands the legal nature of appellant's claims. He is not asserting Free Exercise Clause claims; he is asserting Establishment Clause claims. "The Establishment Clause limits any governmental effort to promote particular religious views to the detriment of those who hold other religious beliefs or no religious beliefs, while the Free Exercise Clause affirmatively requires the government not to interfere with the religious practices of its citizens." *Brown v. Gillmore*, 258 F.3d 265, 274 (4th Cir.), *cert. denied*, 122 S. Ct. 465 (2001). We conclude that appellant's allegations have stated equal protection claims, including the requisite injury. The district court's dismissal of these claims is reversed.

*Summary*

The district court's First Order is reversed as to Count One. The district court's Second Order is reversed *in toto*, except as to the third part of Count Two, and Counts Eight and Nineteen, which are affirmed on alternate grounds. None of the claims that survived the district court's First Order were frivolous. First, many of those claims survived the first summary judgment motion because genuine issues of material fact existed which precluded judgment under the applicable standards. Second, the district court's conclusion that the claims were frivolous came only after analysis of each claim in light of applicable law and

legal standards.  This kind of determination does not support a conclusion of frivolousness.  *See Raymer v. Enright*, 113 F.3d 172, 174 n.1 (10th Cir. 1997).

*Motion to Amend*

Two months after appellant filed his amended complaint, he filed motions to add two additional claims and the respective defendant s.  R., Vol. I, docs. 32A & 32B.  He alleged specific facts in support of these claims.  The district court failed to rule on this motion, and defendant s did not address the additional claims in their dispositive motions.  Leave to amend should have been granted in the absence of prejudice to defendant s.  Further, failure to rule may constitute an abuse of the district court's discretion.  *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Outright refusal to grant . . . leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.").  On remand, the district court should rule on appellant's motion to amend to add the additional two claims and defendant s.

*Remand*

In light of our rulings, the following claims are remanded to the district court for further consideration: Count One, parts one and two of Count Two, and Counts Four, Five, Twelve, Fourteen, and Eighteen.  The court is directed to rule

on appellant's motion for leave to add claims. Defendants have all motions available to them. We remind the district court to liberally construe appellant's pleadings in this case. *See Cummings*, 161 F.3d at 613. Finally, because several of appellant's claims have been reinstated, we leave to the district court's sound discretion whether to appoint appellant counsel for further proceedings in this case.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED and REMANDED for further proceedings consistent with this order. Appellant's motion for leave to proceed without prepayment of costs or fees is granted. The mandate shall issue forthwith.

Entered for the Court

Bobby R. Baldock
Circuit Judge