[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-3062

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 4, 2000
THOMAS K. KAHN
CLERK

D. C. Docket No. 95-01086-CIV-J-21B

RASIKH ABDUL HAKIM,
f.k.a. Kenneth D. Quince,

Plaintiff-Appellee,
Cross-Appellant,

versus

MILTON HICKS; W.C. DIXON;
H. D. SKEEN; LISA M. SANDERS;
C. CORNETT; RICHARD TUCKER;
T. B. LONG; CELESTE KEMP;
and TED KEY, et al.,

Defendants-Appellants,
Cross-Appellees,

_____

No. 99-12050

_____

D. C. Docket No. 95-01086-CIV-J-21B

RASIKH ABDUL HAKIM,
f.k.a. Kenneth D. Quince,

versus

MILTON HICKS, W. C. DIXON,
H. D. SKEEN, C. CORNETT,
RICHARD TUCKER, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(August 4, 2000)**

Before BLACK, CARNES and KRAVITCH, Circuit Judges.

BLACK, Circuit Judge:

Appellee is a death row inmate of the Florida Department of Corrections (DOC) confined in the Union Correctional Institution in Raiford. When convicted and committed to incarceration for a 1979 murder and sexual battery, his name was Kenneth D. Quince.[1] While incarcerated, Appellee converted to Islam and took the religious name Rasikh Abdul Hakim. In 1993, he obtained from the State of Florida a legal name change to his Muslim name. In November 1995, Hakim filed suit pro se under 42 U.S.C. § 1983 against various DOC officers, alleging the DOC was violating his constitutional right to the free exercise of religion under the First and Fourteenth Amendments by refusing to recognize his legally changed religious name within the prison. The district court construed Hakim's complaint for relief as a demand that the prison follow a "dual-name policy" of permitting Hakim to identify himself by both his commitment name and his religious name—that is, "Kenneth D. Quince a.k.a. Rasikh Abdul Hakim" or the converse.

In this appeal, we are concerned only with a limited issue: the portion of the district court's July 17, 1998, order (the July 17 Order) that directed the DOC to comply with the dual-name policy on Hakim's prison identification card and its use in obtaining prison services. In case number 98-3062, the DOC has appealed that order insofar as it mandated the addition of Hakim's religious name to comply with

---

[1] *See Quince v. State*, 414 So. 2d 185 (Fla. 1982).

3

the dual-name policy on the identification card. Later, the district court rejected the DOC's proffered compliance with that order, after which the DOC filed a Rule 60(b) motion for relief from judgment. In case number 99-12050, the DOC has appealed the district court's June 11, 1999, order denying the Rule 60(b) motion. We affirm the district court in both cases.[2]

## I. BACKGROUND

Hakim's complaint challenged the DOC's policies on inmates' name usage in a number of areas. He sought to compel the DOC to follow a dual-name policy for incoming and outgoing mail, in the "Alpha Run" master database of prisoner information, and on his prisoner identification card and those related prison services obtained using the card. The district court's September 15, 1997, order granted summary judgment in favor of the DOC with respect to mail because the DOC already had in place a dual-name policy for mail. In the July 17 Order, the district court granted summary judgment to the DOC on the database claim. The database, although primarily using the commitment name, includes a (non-searchable) field for aliases, to which Hakim's religious name had been added. Hakim has not appealed these rulings, which in any event were correct. *See, e.g.*, *Malik v. Brown*, 71 F.3d 724, 730

---

[2] With respect to Hakim's cross-appeal in case number 98-3062, we affirm without discussion the portion of the district court's September 15, 1997, order dismissing under the doctrine of qualified immunity Hakim's claims against DOC officers in their individual capacities. *See* 11th Cir. R. 36-1.

(9th Cir. 1995) (denying qualified immunity because requirement that prison comply with dual-name policy for mail was clearly established under Ninth Circuit standard); *Salaam v. Lockhart*, 905 F.2d 1168, 1174 (8th Cir. 1990) (holding that prison acted unreasonably in refusing to add religious name a.k.a designation to files).

The district court's July 17 Order also addressed Hakim's claim alleging that

> [T]he dual name system (the use of a commitment name in conjunction with a legal religious name) has not been adopted by the [DOC] with respect to the inmate identification card and the services related to that card (canteen, notary and banking services). [Hakim] asks that the dual name policy be extended to the identification card so that the card will have his legal religious name, in conjunction with his commitment name, allowing for transactions and services to be utilized through the dual name policy.

The DOC's policy of issuing identification cards *only* in the commitment name precluded use of all forms of related services under the dual-name policy because "to access internal services such as the inmate bank and the canteen, an inmate must use an identification card." Similarly, the DOC's own documentation in support of summary judgment revealed that it requires "a laborious process to obtain notary services in a legal name without possessing an identification card in that name." The district court ultimately granted summary judgment in favor of Hakim "with respect to the claim concerning the identification card. The claim concerning internal services is absorbed by the identification card claim since the internal services are operated and received through possession of an identification card." The DOC has appealed this

5

order, as well as the district court's June 11, 1999, order denying the DOC's Rule 60(b) motion for relief from the summary judgment order.

We review de novo the district court's summary judgment order, applying the same legal standards as the district court. *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1339 (11th Cir. 2000). We review for abuse of discretion the district court's denial of the motion for relief from judgment. *See Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1304 n.4 (11th Cir. 2000).

## II.  ANALYSIS

A.    <u>Case Number 98-3062: The Order Requiring the DOC to Follow the Dual-Name Policy for the Identification Card and Related Services</u>.

In his complaint as construed by the district court, Hakim demanded the DOC follow a dual-name policy for his prison identification card and its use in obtaining related prison services. Hakim asserted the DOC's failure to follow a dual-name policy violated his constitutional right to the free exercise of religion by denying him his Muslim identity and recognizing only his prior, forsaken self. This type of free exercise of religion claim within a prison has been recognized consistently in the federal courts. *See, e.g., Malik v. Brown*, 71 F.3d 724, 727-29 (9th Cir. 1995) (collecting cases); *Salaam v. Lockhart*, 905 F.2d 1168 (8th Cir. 1990).

Unlike the strict standards of scrutiny applicable to the constitutional rights of persons in free society, the Supreme Court has adopted a deferential standard for

6

determining whether a prison regulation violates an inmate's constitutional rights. A prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable.[3] *See Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S. Ct. 2400 (1987) (applying *Turner* standard to free exercise of religion claim). This Court has described the standard as follows:

> The *Turner* Court identified several factors that serve to channel the reasonableness inquiry: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.

*Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (citing *Turner*, 482 U.S. at 89-91, 107 S. Ct. at 2261-62; *Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991)); *accord, e.g.*, *Onishea v. Hopper*, 171 F.3d 1289, 1299 & n.17 (11th Cir. 1999) (en banc).

---

[3] The DOC has not argued in this case that the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872, 110 S. Ct. 1595 (1990), requires application of a different standard. Accordingly, we do not decide the issue. *Cf. Harris v. Ostrout*, 65 F.3d 912, 918 n.5 (11th Cir. 1995); *cf. also Sasnett v. Litscher*, 197 F.3d 290, 292-93 (7th Cir. 1999); *Ward v. Walsh*, 1 F.3d 873, 876-77 (9th Cir. 1993); *Salaam*, 905 F.2d at 1171 n.7.

The federal courts accordingly have determined the *Turner* standard limits the scope of inmates' free exercise right to use a religious name in prison. The Ninth Circuit summarized the decisions in the following manner:

> The cases have consistently supported three propositions. First, an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name. Second, an inmate cannot compel a prison to reorganize its filing system to reflect the new name. Third, in states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names.

*Malik*, 71 F.3d at 727 (citations omitted). This Court has held that a dual-name policy always is sufficient to satisfy an inmate's free exercise claim involving use of a religious name. *See Fawaad v. Jones*, 81 F.3d 1084 (11th Cir. 1996). In *Fawaad*, we concluded, even under the strict scrutiny standard applicable under the (now-defunct[4]) Religious Freedom Restoration Act, the prison's dual-name policy adequately vindicated the inmate's religious-name free exercise right. *See id.* at 1086-87. Therefore, this case does not raise questions on two issues. First, it is established by *Fawaad* that the DOC's compliance with a dual-name policy would resolve Hakim's free exercise claim. *Cf. also Mujihadeen v. Compton*, 627 F. Supp. 356 (W.D. Tenn. 1985) (holding that identification card issued under dual-name policy did not violate inmate's Free Exercise Clause rights). Second, although under the case law it appears

---

[4] *See City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S. Ct. 2157, 2172 (1997).

8

the DOC would be required to recognize only legally changed names to satisfy the *Turner* reasonableness standard, we need not decide that question because Hakim obtained a legal name change from the State of Florida. *Cf. Matthews v. Morales*, 23 F.3d 118 (5th Cir. 1994) (holding that statute prohibiting felons from obtaining legal name changes did not violate Free Exercise Clause).

In the district court and on appeal, the DOC has maintained it should not be required to follow a dual-name policy for identification cards or related services. The DOC asserts its policy that identification cards will be issued *only* in the commitment name, and that related services may be obtained *only* in the commitment name, does not violate Hakim's free exercise of religion right under the *Turner* standard.

The district court rejected the DOC's argument in its July 17 Order and concluded the DOC's policy was unreasonable under *Turner*. The court first considered "whether there is a valid, rational connection between the policy and the penological objectives of maintaining order and security" relied upon by the DOC. The DOC asserted the identification card was an integral part of prison order and security because it is necessary to be able rapidly to identify inmates.[5] To the extent

---

[5] Much of the identification card's area (about the size of a driver's license) is comprised of the inmate's photograph and, in large type, the word "INMATE," the inmates' prisoner number, and the commitment name. This permits rapid identification of the inmate from a safe distance. In addition, the face of the card contains the electronic bar code used to obtain prison services and, in considerably smaller type, the other identifying characteristics of race, hair and eye color, height, weight, and date of birth.

related prison services require identification, such as notary services, the card fulfills that purpose as well. The DOC then argued the addition of any other name—even in the a.k.a. designation form under a dual-name policy—would undermine these interests by creating confusion, delay, and possible security problems such as gang affiliations or prisoners demanding that guards address them by the religious name. After considering the evidence in the record, the district court did not credit the DOC's arguments. The court determined it was "not convinced that the addition of a *legal religious name* as an alias would result in mass confusion or disruption of the inmate identification system," found that "the fear of misidentification cannot be supported," and concluded "the security arguments presented by the [DOC] for refusing to add a legal religious name are not novel and have been rejected by other courts."

The district court next evaluated whether the DOC's policy provided alternative means for Hakim to exercise his right. The court found that the policy did not because Hakim had "been allowed to receive certain services and benefits only under his committed name because the identification card is issued in his commitment name, rather than under a dual name system." The court also determined the DOC had failed to introduce any convincing evidence that following a dual-name policy and adding Hakim's legal, religious name to his identification card would create an administrative

or other burden on the DOC. The court found that the DOC had "neither asserted nor shown with operative facts that the changes required by the 'a/k/a' alternative would clog the system" and that the "administrative burden of adding an 'a/k/a' designation of a legal religious name change on an identification card is minimal and will not interfere with the [DOC's] current record-keeping practices." Finally, because "the costs are *de minimis*," the DOC's policy was an exaggerated response to prison concerns. In light of the failure of the DOC's evidence under all four prongs of the *Turner* reasonableness inquiry, the district court concluded the DOC's policy of refusing to follow a dual-name policy for the identification card and related services violated Hakim's constitutional free exercise right.

After our review of the record, we conclude the district court did not err in determining the DOC's policy was unreasonable under the *Turner* standard. *Cf. also Salaam*, 905 F.2d at 1176 (determining that prison's refusal to add religious name to commitment name and inmate identification number already on inmate's clothing was unreasonable); *id.* at 1170 (holding that prison must add religious name to prison files to enable prisoner to obtain prison services in religious name); *Ali v. Dixon*, 912 F.2d 86, 90 (4th Cir. 1990) (concluding that prison's refusal to add religious name to files, which precluded inmate from accessing trust account funds in religious name, was unreasonable). We therefore affirm the district court's July 17 Order granting

11

summary judgment in favor of Hakim "with respect to the freedom of religion claim regarding the identification card and related internal services" and mandating the DOC "shall implement" a dual-name policy by "adding a legal (statutory) religious name, through an 'a/k/a' designation, to an inmate's identification card" upon notification and proof of the change.

B.   Case Number 99-12050: Whether the District Court Abused Its Discretion by Denying the DOC's Rule 60(b) Motion.

1.   Background to the Rule 60(b) Motion.

On October 29, 1998, the DOC filed a "defendants' notice of compliance with court order." The DOC asserted it had complied with the July 17 Order, within the time provided by the district court, by affixing a computer-printed label to the reverse side of Hakim's identification card. The label read: "This is to certify that the legal religious name of inmate DC #075812 for purpose of notary services is: RASIKH ABDUL HAKIM," and was signed by the superintendent of the Union Correctional Institution. The DOC also supplied to the district court an interim policy which provided that the use of such affixed, printed labels on the reverse side of identification cards would be the regular method of complying with the district court's order, substituting the appropriate prisoner number and religious name and retaining the reference to notary services.

12

On November 20, 1998, the district court issued an order stating that the DOC's notice of compliance "is hereby found *not to be in compliance* with the Court's" July 17 Order. No further statement or explanation was provided. The district court also stayed the case because the appeal of the July 17 order was pending in this Court.[6]

On December 8, 1998, the DOC filed a "motion for clarification of court order," requesting the district court to explain why the DOC's action was not in compliance or what must be done differently to comply. Relying on several exhibits first provided to the court as attachments to the October 29, 1998, notice of compliance, the DOC stated that the name field on the front of the identification card contains space for only 30 characters (precluding the display of both of Hakim's names in that field), that modifying the size of the name field on the front of the card would negatively affect the other fields (hindering security concerns), and that the front of the card could not be redesigned without re-programming the computers system used to generate cards. On February 2, 1999, the DOC filed a supplemental affidavit from DOC information technology official Michael Fansler. The affidavit averred that the costs of re-programming the computer system to add a second name to the front of the

---

[6] In case number 98-3062, the DOC filed its notice of appeal on July 30, 1998, and Hakim filed his notice of cross-appeal on August 3, 1998.

13

identification card would be significant and that the costs of modifying software and hardware to produce the revised cards would be even greater.

Without a decision by the district court on the motion for clarification, the DOC filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) on March 9, 1999 (the Rule 60(b) motion).[7] The Rule 60(b) motion recited the same arguments made in the December 8, 1998, motion for clarification: the label on the reverse of the card, providing the religious name for purposes of notary services, was in fact in compliance with the district court's July 17 Order; the costs of reconfiguring software and hardware to add the name to the front of the card would be great; and the district court had given no explanation to the DOC about how to change its behavior to be in compliance.

2.    The District Court's Order Denying the Rule 60(b) Motion.

On June 11, 1999, the district court lifted and then re-instituted its stay pending the appeal to issue its order on the DOC's Rule 60(b) motion. The court ordered simply that the motion "is DENIED." The district court's failure to provide reasons for holding the DOC had not complied with its July 17 Order or for denying the

---

[7] The DOC previously had filed a motion in this Court seeking to have this Court relinquish jurisdiction of the appeal of the July 17 Order to enable the district court to modify the judgment and clarify what form of compliance was required. The Clerk of this Court directed the DOC to file a Rule 60(b) motion in the district court, citing *Lairsey v. Advance Abrasives Company*, 542 F.2d 928, 932 (5th Cir. 1976).

14

DOC's Rule 60(b) motion makes more difficult our consideration of the DOC's appeal from the order denying that motion.

Under the *Turner* standard, the district court is not permitted to micro-manage prison affairs or to preclude the DOC from using any reasonable prison regulation or policy. The DOC therefore also had considerable discretion in fashioning its compliance with the district court's July 17 Order, so long as the means selected were reasonable and were in full compliance with the terms of the district court's order. The district court's July 17 Order displays a sound understanding of the limits of the court's authority under *Turner*. Yet the means of compliance selected by the DOC—the label bearing Hakim's religious name affixed to the reverse side of his identification card—was reasonable. An order directing the DOC specifically where on an identification card to place a name would have been a quintessential example of improperly micro-managing the prison. Other aspects of the record, however, lead us to the conclusion that there are at least two reasons the district court did not abuse its discretion in denying the Rule 60(b) motion.

First, and most importantly, the district court properly could have concluded the label used by DOC is deficient on its face because it states the religious name is provided "for notary purposes." As described above, the district court's order was quite clear in describing a number of prison services related to the identification card,

15

including, for example, banking and canteen services. In addition, the fact that these services could be obtained only in the commitment name was a basis for the district court's finding that no alternative means for exercising the right existed. When the district court ordered that Hakim's religious name be added as an alias "regarding the identification card and related internal services," the district court therefore directed the DOC to comply with respect to *all* of these related services, not merely notary services. Thus, the district court did not abuse its discretion in determining the DOC's "notary purposes" label was not full compliance with its order.

Second, the DOC's evidence of the cost of compliance was not introduced before the court considered the summary judgment motions. The DOC belatedly sought to show the high cost of following a dual-name policy on the identification card only months later, when it had only partially complied with the order. Although the *Turner* standard is deferential, its third prong expressly contemplates consideration of the costs to the prison of accommodating religious rights. The DOC had a full opportunity to introduce evidence of the costs of the dual-name policy for the identification card when making its *Turner* arguments. The district court might have given the DOC more direction on the issue of compliance or even have decided the legal issue differently had this information been available. The district court

accordingly did not abuse its discretion in rejecting the DOC's post hoc attempt to correct its error in litigation strategy.

We conclude the addition of Hakim's religious name to the reverse of his identification card—so long as he can obtain *all* related services under the dual-name policy, as ordered by the district court—adequately protects, under the *Turner* reasonableness standard, Hakim's free exercise right regarding his religious name. The DOC's actual addition to Hakim's identification card, however, contained the "for notary purposes" proviso, which can be interpreted as restricting Hakim's access to related services under the dual-name policy, in contravention of the district court's July 17 Order that the dual-name policy be applied to all related services. To be in compliance with the July 17 Order, the DOC therefore had to do two things. First, the DOC had to add Hakim's religious name to his identification card—and its addition to the reverse side of the card would be sufficient compliance with the July 17 Order and with *Turner*. Second, the DOC's addition had to permit Hakim to obtain all related prison services under the dual-name policy. Based on the DOC's conduct as of June 11, 1999, the DOC had satisfied the first requirement and the district court did not abuse its discretion in determining the DOC had failed to meet the second requirement. To comply with the district court's July 17 Order, the DOC must correct its label by, for example, removing any restrictive language or, more clearly, by

17

expressly providing that the religious name may be used to obtain all prison services under the dual-name policy. In the absence of the satisfaction of the second requirement, however, we must affirm the district court's order denying the DOC's Rule 60(b) motion.

## III. CONCLUSION

We affirm the district court's order directing the DOC to follow a dual-name policy on Hakim's prison identification card and its use in obtaining prison services. The DOC attempted to comply with this order by preserving the commitment name on the front of the card and providing the religious name alias designation on the reverse side with an affixed label. At the time of the district court's consideration of the DOC's Rule 60(b) motion, however, the label mentioned approval for notary services, not all prison services as ordered by the district court. Accordingly, the district court did not abuse its discretion in denying the Rule 60(b) motion.

AFFIRMED.

KRAVITCH, Circuit Judge, Specially Concurring:

I agree with the majority's affirmance of the district court and therefore concur. I write specially, however, to express my disagreement with the majority's observations regarding the addition of Hakim's religious name to his inmate identification card. As the majority correctly notes, the district court's July 17, 1998, order required the DOC to: (1) add Hakim's religious name to his inmate identification card and (2) permit Hakim to obtain all prisoner services with his religious name. The DOC provided Hakim with a new identification card with a label on the back identifying Hakim's religious name for notary purposes. Hakim then filed a Notice of Defendants' Intent to Circumvent This Court's Order in which he contended only that the DOC did not comply with the district court's July 17, 1998, order because it did not place his religious name on the front of the identification card. The DOC responded with a Notice of Compliance With Court Order in which it contended that its addition of Hakim's name complied with the court's order. The district court found to the contrary and issued an order stating simply that "Defendants' Notice of Compliance With Court Order . . . is hereby found *not to be in compliance* with the Court's Order filed July 20, 1998." The district court subsequently denied the DOC's motion for relief from judgment.

19

All of the filings preceding the district court's finding of noncompliance focused solely on the placement of Hakim's religious name without reference to the notary services limitation, and the district court's order finding the DOC in noncompliance did not announce the basis for its finding. In spite of this background and the sparse language of the district court, however, the majority asserts that the notary limitation to Hakim's religious name, rather than the name's placement, supported the district court's finding of noncompliance.

The majority's attempt to recast the district court's order affords the majority an opportunity for its gratuitous opinion that the DOC's addition of Hakim's religious name with a label affixed to the back of his identification card satisfied the *Turner* reasonableness standard. I do not agree that affixing a label bearing Hakim's religious name to the back of his identification card adequately protects his free exercise rights under *Turner*. Once Hakim converted to the Muslim faith, he was required by his religion to adopt a new name reflecting his commitment to the attributes of Allah. Relegating this significant conversion to the back of an identification card, in the absence of compelling evidence by the DOC in support of this policy, does not in my view comport with the *Turner* reasonableness standard. Rather, it would be

20

reasonable for the DOC to place Hakim's religious name, using an "a.k.a." designation following his committed name, on the front of the identification card.[8]

---

[8] We agree with the majority that the notary services limitation was improper.

21