FILED
United States Court of Appeals
Tenth Circuit

July 31, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MICHAEL WHITE,

     Defendant-Appellant.

No. 11-3341
(D.C. No. 09-CR-20147-KHV-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **EBEL** and **HARTZ**, Circuit Judges.

Michael White, a.k.a. Abdul Hakeem Kareem Mujahid ("Appellant"), a federal

prisoner, challenges the district court's refusal to amend his judgment of conviction to

reflect his new, Muslim name, claiming that this refusal violates his constitutional

religious rights. For the reasons discussed below, we AFFIRM.

Appellant was convicted of one count of voluntary manslaughter, in violation of

---

[*]The parties do not request oral argument, and we determine that it would not materially
assist the determination of this appeal. This Order and Judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. The court generally disfavors the citation of orders and judgments;
nevertheless, an order and judgment may be cited consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

18 U.S.C. §§ 7(3) and 1112, and two counts of assault with a deadly weapon, in violation of 18 U.S.C. §§ 7(3) and 113(a)(3), in the District of Kansas in 2010. On December 30, 2010, the district court sentenced Appellant to ten years' imprisonment, a term he is currently serving at the ADX federal prison in Florence, Colorado. On the same day he was sentenced, a state district court in Leavenworth County, Kansas, granted Appellant's petition to change his legal name to Abdul Hakeem Kareem Mujahid.

On January 15, 2011, Appellant filed a letter with the federal district court, advising that his legal name had been changed, and asking the court both to order the Bureau of Prisons ("BOP") staff at ADX to recognize Appellant's name change in its SENTRY database, and to amend the judgment and all other records in his criminal case to reflect his new legal name. On April 13, 2011, Appellant filed another letter with the district court, reiterating his request that the judgment be amended, indicating that the warden of ADX had informed Appellant that the prison would not change his name in SENTRY absent a court order. Two days later, Appellant filed yet another letter, again requesting that his judgment be amended, and complaining that prison officials refused to recognize him by his new name, which he changed for religious purposes, "by changing [his] name on [his] name tag and other documents." R. at 21.[1]

---

[1] The BOP regulation that Appellant attached as an exhibit to his April 15 letter states, in relevant part:

> The name entered on the [judgment] is considered the committed name to be used by the inmate, as well as the [BOP]. SENTRY must reflect the committed name, which may only be changed by an order from the Federal

The district court addressed these letters in an order issued April 21, 2011, denying Appellant the relief he requested. Although Appellant had never explicitly alleged that the BOP had infringed his constitutional rights by refusing to recognize his name change, the district court, liberally construing Appellant's pro se letters, held that case law supported the constitutionality of the BOP's policy and practice in this case. The court determined that while Appellant "has an interest in prospective recognition of his adopted Muslim name[,] . . . [h]e does not . . . have a right to retroactively change the name under which he was convicted or to dictate how prison officials keep their records." Aple. Br., Attach. A at 2. The court noted that Appellant had "changed his legal name on the same date that the Court sentenced him" and that "[a]t sentencing, however, [he] did not inform the Court of his pending name change or ask the Court to use his new name." Id. at 3. The court concluded that "[g]ranting [Appellant's] request to amend the [judgment] to reflect his new name would therefore result in confusion and record-keeping problems for the federal courts." Id.

Appellant filed three subsequent motions for reconsideration with the district court (two in May 2011 and one in August 2011), although these documents have not been included in the appellate record. The district court responded to these motions in a second order on September 26, 2011. The court restated the holding portion of its prior order; then it acknowledged that in his most recent motion, Appellant had expressly

---

sentencing court.

Federal Bureau of Prisons, Correctional Systems Manual, Ch. 5 § 502(e).

abandoned his request that his judgment be amended, asking the court simply to enter an order reflecting his name change. The court then noted that "applicable BOP policy provides that in addition to legal names reflected in a [judgment], 'inmates may adopt name changes in accordance with religious affiliations or other lawful means. It is the inmate's responsibility to provide CSD staff with verifiable documentation of the name change which will be entered by staff in [SENTRY]." Aple. Br., Attach. B. at 3 (quoting Federal Bureau of Prisons, Correctional Systems Manual (hereinafter "BOP Manual"), Ch. 4 § 402(d) (emphasis in order, added from regulation)). The court observed that under that policy, the BOP would recognize Appellant's new legal name, in addition to his committed name, if he provided BOP with a certified copy of the Kansas state-court order changing his name. The court therefore declined Appellant's request for an order regarding his change of name.

In his pro se appellate brief, Appellant states that he is "required by [his] religion to adopt a Muslim identity reflecting [his] commitment to his faith" and that "[i]n order for [him] to utilize [his] religious name officially in prison . . . the federal sentencing judge must amend [the] judgment [to] reflect[] [his] amended name." Aplt. Br. at 2. Appellant asserts that the district court's "refusal . . . to amend [the] judgment or . . . [to] order[] the prison to recognize and address [him] by [his] legal name, [his] constitutional rights is [sic] presently being violated." Id. at 3. As a citation thereafter, he states: "1st Amendment – Free Exercise Clause, Free exercise of religious 14th Amendment – Equal

4

Protection."[2] Id. Appellant argues that the district court has "the authority to amend [the] judgment, as is required by the BOP policy to enable [him] to utilize his religious name in prison," id., and asserts that courts have done so in other cases in the past. For relief, Appellant asks us "[t]o reverse the district court, and remand, instructing the district court to comply with the BOP policy." Id. at 4.

We determine that Appellant's appeal is without merit. As to Appellant's appeal from the district court's refusal to amend the judgment, we find no abuse of discretion in that refusal. See United States v. Baker, 415 F.3d 1273, 1274 (11th Cir. 2005). We agree that Appellant is not constitutionally entitled to that relief, for substantially the same reasons and authority discussed in the district court's April 21, 2011, order, see Aple. Br., Attach. A at 2-3.[3]

---

[2] Appellant's single bald citation to the Equal Protection Clause is too superficial to trigger substantial analysis of that theory of constitutional violation, even under our liberal construction standard for pro se litigants. See, e.g., Gruenwald v. Maddox 403 Fed. App'x 306, 307 (10th Cir. 2010) (unpublished) (citing Fed. R. App. P. 28(a) and Utahns for Better Transp. v. U.S. Dep't of Transp., 305 F.3d 1152, 1175 (10th Cir. 2002). In his brief, Appellant later states that the district court "can uphold his 1st Amendment [rights]" when discussing the district court's "duty to uphold the Constitution," but does not again mention the Fourteenth Amendment. Aplt. Br. at 3. Further, Appellant repeatedly emphasizes his religious rights, thereby naturally implicating the First Amendment; but in contrast, he never identifies any protected class of which he might be a part for Fourteenth Amendment purposes. Also, Appellant never raised the issue of equal protection below. We therefore decline to craft an equal-protection argument on Appellant's behalf, see United States v. Graham, 305 F.3d 1094, 1107 (10th Cir. 2002), and we focus instead on his First Amendment argument.

[3] Hakim v. Hicks, 223 F.3d 1244 (11th Cir. 2000), cited by Appellant for the proposition that the district court should amend his judgment, see Aplt. Br. at 4, is inapposite. In Hakim, the Eleventh Circuit determined, in an appeal in a 42 U.S.C. § 1983 action by a

Next, to the extent that Appellant separately seeks an order directing the BOP to alter its name-recognition practices with respect to Appellant, we observe that a direct criminal appeal like this one,[4] as opposed to a civil complaint, is not the vehicle through which to seek redress of alleged violations of Appellant's First Amendment rights in prison. Rather, a civil suit initiated by Appellant against appropriate defendants (e.g., the BOP) would be proper, assuming he has valid constitutional claims. In any event, in this case, Appellant has not alleged that the BOP has refused to provide dual-name recognition following his compliance with the procedure for establishing dual-name recognition, see BOP Manual, Ch. 4 § 402(d), as noted by the district court in its September 26, 2011, order. Thus, it is apparent that Appellant has not pursued the administrative remedies available for the relief he seeks. Moreover, judging from the

state prisoner against the Florida Department of Corrections ("FDOC"), that the FDOC had violated the prisoner's First Amendment rights by its failure to recognize both his committed name and his legal, Muslim name (which he acquired after having been incarcerated) on his prisoner identification card as well as with his mail. 223 F.3d at 1246-47. The Eleventh Circuit thus ordered the FDOC "to follow a dual-name policy on [the prisoner's] identification card and its use in obtaining prison services," id. at 1252, but did not order that the prisoner's judgment of conviction be amended to reflect his new name. To the extent Appellant seeks to have the BOP follow a dual-name policy in his case—independent from the issue of amending his judgment—that is discussed infra.

Meanwhile, Appellant's implicit assertion that the district court failed "to comply with . . . BOP policy" is misguided. Aplt. Br. at 4. The BOP's regulations do not compel the district court to take any action in this situation; they simply state what actions the BOP will take if and when a district court issues an order. See supra n.1.

[4] This appeal is from the denial of the requests in Appellant's post-trial letters to the district court that handled his criminal case, with those letters resembling motions to amend or to correct the judgment under Fed. R. Civ. P. 59 or 60, respectively (though they were not labeled as such).

6

appellate record, we discern no allegations by Appellant that explain with any substantial specificity the factual basis for his constitutional claims (e.g., regarding receipt of mail). For these reasons, we conclude that Appellant has failed plausibly to allege that he is entitled to relief in this case.  See Gee v. Pacheco, 627 F.3d 1178, 1185-88 (10th Cir. 2010) ("Nowhere in the law does context [surrounding alleged legal wrongs] have greater relevance to the validity of a claim than prisoner civil-rights claims. . . . [A] prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts. . . . [A prisoner alleging First Amendment violations] must include sufficient facts to indicate the plausibility that the actions of which he complains were not reasonably related to legitimate penological interests [under Turner v. Safley, 482 U.S. 78 (1987)].").

The district court is AFFIRMED.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

7