[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10770

_____

BRADLEY DORMAN,

Plaintiff-Appellant,

*versus*

CHAPLAINS OFFICE BSO,
Richard Aronofsky,
CHAPLAINS OFFICE BSO,
Capri Jordan,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-61392-RKA

_____

Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

JORDAN, Circuit Judge:

Bradley Dorman, a Jewish inmate at the Broward County Main Jail in Fort Lauderdale, Florida, did not participate in Passover in 2018 because he failed to register 45 days prior to its celebration as required by the Jail's policy. Proceeding *pro se*, he sued Broward Sheriff's Office Chaplains Richard Aronofsky and Capri Jordan under 42 U.S.C. § 1983, alleging violations of his rights under the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), and the Due Process Clause of the Fourteenth Amendment. The district court dismissed the claims with prejudice under Rule 12(b)(6), and Mr. Dorman appealed. We appointed counsel for Mr. Dorman and set the case for oral argument.[1]

We now affirm. First, the 45-day registration requirement did not constitute a substantial burden on Mr. Dorman's exercise of his Jewish faith under the RLUIPA, and therefore it also did not violate the First Amendment's more lenient reasonableness standard. Second, the electronic posting of the 45-day registration requirement on the Jail's computer kiosk, which he and other

---

[1] We thank Ashley M. Litwin, Esq., for her fine representation of Mr. Dorman on appeal.

inmates used to communicate with Jail staff, provided adequate notice of the registration requirement to satisfy due process.

## I

Because we are reviewing a Rule 12(b)(6) dismissal, we accept Mr. Dorman's factual allegations as true. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Here's what the complaint alleged.

## A

In 2017, Mr. Dorman successfully signed up for and participated in the Passover celebration, which began on April 10. *See* D.E. 1 at ¶ 11. He initially "attempted to sign up" for Passover on March 6, 2017, using the Jail's kiosk messaging system, but Chaplain Jordan replied that "Passover isn't until April." *Id.* at ¶ 10. On April 3, 2017, Mr. Dorman again messaged the Chaplain's Office his request to "sign . . . up for the [P]assover services and diet[.]" That same day, just a week shy of Passover, an employee of the BSO Chaplain's Office replied that "[they] will add [his] name" to the list of Passover participants. *See id.* at ¶ 11; D.E. 3 at 7.

The following year, 2018, Passover began on March 30 and ended on April 7. On April 1, after Passover had started, Mr. Dorman again utilized the kiosk to request that the Chaplain's Office add him to list of participating inmates in the Passover celebration. *See* D.E. 1 at ¶ 6. This time, however, his request was denied, with Chaplain Jordan explaining on April 2 that "[t]he deadline to sign up [for Passover] was" on February 14. *Id.* at ¶ 7. On April 4, Mr.

Dorman replied, asking: "[I] signed up last year for Passover the first week of [A]pril, when did the policy change? [I] would assume [I] would be notified of any changes." *Id.* at ¶ 8. That same day, Chaplain Jordan sent Mr. Dorman the following message: "It was posted on the kiosk that the deadline to sign up to participate in Passover was February 14." *Id.* at ¶ 9.[2]

On April 6, 2018, Mr. Dorman filed a grievance with the Chaplain's Office, claiming that "a notification regarding Passover was not posted" in 2018 and that "no notice was posted" in 2017. *Id.* at ¶ 12. Chaplain Aronofsky rejected the grievance as "unfo[u]nded," explaining that "the notice [was] posted in the kiosk for all inmates" and that "[a]t this time [P]assover is over." *See id.* at ¶ 13; D.E. 3 at 5. Mr. Dorman appealed this determination, but Chaplain Aronofksy denied the appeal on the same grounds and closed the matter. *See id.* at ¶ 16.

## B

Mr. Dorman filed a *pro se* complaint under 42 U.S.C. § 1983, asserting that Chaplains Aronofsky and Jordan had denied him the ability to partake in the "proper [Passover] diet and associated religious ceremonie[s]" in violation of the First Amendment and the RLUIPA. *See id.* at ¶¶ 18–19. He also claimed that, when instituting the new 45-day registration policy, Chaplains Aronofsky and Jordan failed to provide proper notice in violation of the Due

---

[2] February 14 was 45 days before the start of Passover in 2018.

20-10770                Opinion of the Court                5

Process Clause of the Fourteenth Amendment. *See id.* at ¶ 20. He expressly alleged that "no . . . notice was posted in the kosher holiday menu section." *See id.* at ¶ 15. He requested a declaratory judgment, a permanent injunction, and compensatory and punitive damages. *See id.* at ¶¶ 22–24.

Chaplains Aronofsky and Jordan filed a motion to dismiss. *See* D.E. 53. They attached to their motion a notice—which appeared to be a printout of the Jail's kiosk homepage—announcing the Passover registration deadline as February 14, 2018. *See id.* at 11.[3]

Mr. Dorman responded to the motion. *See* D.E. 55. In his response, he conceded that a notice had been placed in the Jail's kiosk essentially withdrawing his allegation that there had been no notice. Instead, he asserted that he was "unaware of such posting" on the kiosk homepage because "all notifications that are important are printed and placed around the kiosk." *See id.* at ¶ 3. A magistrate issued a report recommending that the complaint be

---

[3] The notice attached to the last motion to dismiss, *see* D.E. 53 at 11, was (and remains) illegible. At oral argument, we were informed that this was the result of a formatting error in uploading the document. Though the district court cited to the illegible version of the notice in its order, there are legible versions of the same notice in the record. *See* D.E. 23 at 11; D.E. 36; D.E. 38 at 3. We therefore reject, without further discussion, Mr. Dorman's claim that he was not afforded due process because of an illegible notice. And since Mr. Dorman does not deny the authenticity of the legible version, and for the sake of clarity, we cite to and use the legible notice included in the first motion to dismiss. *See* D.E. 23 at 11.

dismissed for failure to state claims upon which relief could be granted. *See* D.E. 67. Mr. Dorman filed his objections to the report but did so late and offered no explanations for the untimeliness of his objections. *See* D.E. 70.

The district court adopted the magistrate judge's report and dismissed the complaint with prejudice under Rule 12(b)(6). Given the untimeliness of Mr. Dorman's objections, the district court determined that it only needed to review the report for clear error, but nevertheless conducted a *de novo* review "in the interest of justice." D.E. 71 at 3–5. Exercising plenary review, the district court concluded that the 45-day registration requirement did not impose a substantial burden on Mr. Dorman's religion in violation of the RLUIPA or the First Amendment. *See id.* at 5–11. The court also determined that Chaplains Aronofsky and Jordan did not violate Mr. Dorman's due process rights because (1) "[Mr.] Dorman [did] not deny that the Jail posted the notice in the Jail kiosk computer that he and the other inmates routinely used," and (2) the court owed the Jail "due deference" in the manner in which the notice was posted. *See id.* at 12 (internal quotation marks omitted). Finally, the court noted that Mr. Dorman submitted his request to participate in Passover on April 1, 2018—two days *after* the holiday had begun. *See id.* at 10 ("[B]ecause [Mr.] Dorman did not request anything at all until *after* Passover had begun—and, in fact, until *after* the conclusion of the Seder meal and service on March 30,

2018—the Jail could not have timely complied with his request in any event.").[4]

## II

Our review of the district court's Rule 12(b)(6) dismissal is plenary. *See, e.g., Lane v. Philbin*, 835 F.3d 1302, 1305 (11th Cir. 2016). To survive a motion to dismiss, a plaintiff needs to allege facts that are "plausible on [their] face," and "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mr. Dorman, therefore, must plead "factual content that allows [us] to draw the reasonable inference that the defendant[s] [were] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Dorman filed his complaint *pro se*, we read it liberally. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).[5]

## III

Mr. Dorman contends that he has presented a valid § 1983 claim for violation of his rights under the First Amendment and the RLUIPA. We disagree and explain why below.

---

[4] The district court denied leave to amend the complaint. Given when Mr. Dorman sought to register for Passover—two days after it had begun— "amendment would be futile." D.E. 71 at 12.

[5] We agree with the district court that Mr. Dorman's objections to the magistrate judge's report were untimely. Nevertheless, and like the district court, we find it prudent to conduct a *de novo* review of Mr. Dorman's claims.

### A

The First Amendment prohibits Congress from enacting any law "prohibiting the free exercise" of religion. *See* U.S. CONST. amend. I. It applies to the states (and their political subdivisions) through the Due Process Clause of the Fourteenth Amendment. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996) (citing cases).

Though the government may not dictate what an individual can believe, it may enact neutral and generally applicable laws that incidentally burden religious conduct and exercise. *See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878 (1990). So long as the restriction or prohibition of religious conduct or exercise is not "the object" of the regulation "but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." *Id.* In the prison setting, a rule, regulation, or policy restricting the exercise of religion is valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (applying the *Turner* standard to a free exercise of religion claim); *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000) (same).

The RLUIPA was enacted, in part, to address the "'frivolous or arbitrary' barriers imped[ing] institutionalized persons' religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005) (citing 146 Cong. Rec. 16698, 16699 (2000)). As relevant here, Section 3 of the RLUIPA states:

20-10770                Opinion of the Court                    9

> No government shall impose a substantial burden on
> the religious exercise of a person residing in or con-
> fined to an institution, . . . *even if the burden results
> from a rule of general applicability*, unless the govern-
> ment demonstrates that imposition of the burden on
> that person –
>
>> (1) is in furtherance of a compelling govern-
>>       mental interest; and
>>
>> (2) is the least restrictive means of furthering
>>       that compelling governmental interest.

42 U.S.C. § 2000cc–1(a) (emphasis added). The RLUIPA provides greater religious protection than the First Amendment. *See Cutter*, 544 U.S. at 716–17 ("To secure redress for inmates who encountered undue barriers to their religious observances, Congress carried over from [the] RFRA the 'compelling governmental interest'/'least restrictive means' standard."). *See also Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) ("Section 3 of [the] RLUIPA . . . affords . . . prison inmates a heightened protection from government-imposed burdens . . . .") (internal quotation marks and citation omitted), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021).

If a claim fails under the RLUIPA—which embeds a heightened standard for government restrictions of the free exercise of religion—it necessarily fails under the First Amendment. *See Allen*, 502 F.3d at 1264 n.5 ("If a prison's regulation passes muster under [the] RLUIPA, however, it will perforce satisfy the requirements of

the First Amendment, since [the] RLUIPA offers greater protection to religious exercise than the First Amendment offers.") (citation omitted). Because we conclude that Mr. Dorman's free exercise claim fails under the more protective framework of the RLUIPA, we need not separately discuss the First Amendment.

## B

As the Supreme Court has explained, § 2000cc-1(a) of the RLUIPA sets out a burden-shifting framework. First, the plaintiff must show that a government rule, regulation, practice, or policy substantially burdens his exercise of religion. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022). Once the plaintiff has made this showing, the defendant has the burden of proving that the challenged directive is the "least restrictive means of furthering a compelling governmental interest." *Id.*

The complaint here was dismissed at the pleading stage. So, the first inquiry under the RLUIPA is whether Mr. Dorman has plausibly alleged that the 45-day Passover registration requirement substantially burdened the exercise of his Jewish faith.

At times, Mr. Dorman argues on appeal that Chaplains Aronofsky and Jordan completely denied him Passover meals and flatly prevented him from participating in the Passover celebration. *See e.g.,* Appellant's Br. at 17 ("Mr. Dorman was restricted from *any* celebration of Passover, from eating *any* traditional Seder food plate items, and from *any* Passover diet."). But this case is not about a complete prohibition on an inmate's participation in

Passover because no one ever told Mr. Dorman that he was excluded from Passover, and no one forbid him from participation in the celebration. Instead, the narrower question framed by the complaint is whether requiring Mr. Dorman to register 45 days prior to Passover imposed a substantial burden on the exercise of his Jewish faith.

The substantial burden inquiry under the RLUIPA "asks whether the government has substantially burdened religious exercise . . ., not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015). We have held that a substantial burden is "more than an inconvenience" and is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly[.]" *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 829–30 (11th Cir. 2020) (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). We said in *Midrash Sephardi* that a substantial burden can "tend[ ] to force adherents to forego religious precepts" or "mandate[ ] religious conduct," 366 F.3d at 1227, but we recently clarified that these formulations are only examples—and not prerequisites—of a substantial burden. *See Thai Meditation*, 980 F.3d at 830–31.

If they register on a timely basis, inmates like Mr. Dorman can fully participate in the Passover celebration and have a Passover diet. We therefore agree with the district court that requiring Mr. Dorman (and other similarly situated inmates at the Jail) to

register for Passover 45 days in advance is not a substantial burden on their Jewish faith under the RLUIPA. It is admittedly an inconvenience, but it does not pressure, force, or coerce Mr. Dorman or other Jewish inmates to abandon, forego, conform, or delay any of their religious beliefs or practices. *See Konikov v. Orange Cnty.*, 410 F.3d 1317, 1323–24 (11th Cir. 2005) (ordinance which required a rabbi to apply to a zoning board for a special exception in order to operate a "religious organization" did not constitute a substantial burden under the RLUIPA because it did not "coerce conformity of a religious adherent's behavior"); *Aiello v. West*, 207 F. Supp. 3d 886, 900 (W.D. Wis. 2016) (a 90-day advance registration requirement for inmates to request a Seder plate did not impose a substantial burden under the RLUIPA); *McDaniels v. Sherman*, No. C09-1296-JCC, 2011 WL 197441, at *3 (W.D. Wash. Jan. 21, 2011) (a six-week advance registration deadline to participate in Eid al-Fitr was not a substantial burden under the RLUIPA).

Mr. Dorman argues that the change in policy from 2017 to 2018 indicates that a 45-day registration window was not necessary to ensure that the Jail could comply with Passover requests from inmates. But this argument goes to whether the registration requirement was the "least restrictive means of furthering a compelling governmental interest." *Ramirez*, 142 S. Ct. at 1277. Here Mr. Dorman did not plausibly allege a substantial burden on his exercise of religion, and as a result the burden never shifted back to Chaplains Aronofsky and Jordan under the RLUIPA. In other

words, we need not and do not address the wisdom, propriety, necessity, or tailoring of the 45-day Passover registration policy.

## IV

Mr. Dorman also alleged that the notice provided by Chaplains Aronofsky and Jordan about the 45-day registration requirement was insufficient and violated his rights under the Due Process Clause of the Fourteenth Amendment. As noted earlier, in the district court Mr. Dorman abandoned his claim that there was no notice whatsoever and claimed instead that the notice provided was constitutionally defective. He maintains that the electronic posting in the kiosk was ineffective because he was "unaware" of the deadline, that the notice instead should have been printed and placed around the kiosk, and that he should have been personally notified of the registration deadline given his previous participation in Passover services. Each of these contentions is unpersuasive.

The Due Process Clause guards against deprivations of "life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1. Before addressing what process is due, we first examine whether Mr. Dorman has a liberty interest that triggers due process protections. *See Dist. Attorney's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009) ("We must first examine this asserted liberty interest to determine what process (if any) is due.").

State law can be the source of a liberty interest, and a state "creates a protected liberty interest by placing substantive

limitations on official discretion," such that "particularized standards or criteria guide the . . . decisionmakers." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (internal quotation marks and citation omitted). Florida's Religious Freedom Restoration Act (FRFRA), Fla. Stat. § 761.03(1), provides that the government cannot "substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability," unless the application of the burden is in "furtherance of a compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest." Because the FRFRA applies to and protects those in custody, *see Yasir v. Singletary*, 766 So. 2d 1197, 1198 (Fla. 5th DCA 2000), we assume without deciding that it creates a liberty interest sufficient to trigger due process protections.[6]

---

[6] Chaplains Aronofsky and Jordan argue that Mr. Dorman does not have a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which holds that due process liberty interests created by prison regulations will be generally limited to freedom from restraint which "imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life." Given our assumption that Mr. Dorman has—for the purposes of our analysis here—asserted a liberty interest, we need not address this argument but pause to observe that it is not a slam dunk. In *Sandin,* the Supreme Court remarked that looking to the specific language of a law or regulation to determine the existence of a liberty interest "may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public" but not in the jail context where regulations are intended to "guide correctional officials in the administration of a [jail]." *Sandin*, 515 U.S. at 481–82. The FRFRA applies to all persons in Florida—not just

20-10770                Opinion of the Court                15

Here the due process question concerns the adequacy of no-tice. In this context, we are guided by *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950), and not by *Mathews v. El-dridge*, 424 U.S. 319 (1976). *See Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002) ("*Mullane* supplies the appropriate analyti-cal framework . . . [to answer] questions regarding the adequacy of the method used to give notice."); *Arrington v. Helms*, 438 F.3d 1336, 1349 (11th Cir. 2006) ("To determine what type of notice is adequate to satisfy the Due Process Clause, we apply the test set forth in *Mullane*[.]").

*Mullane* requires that notice be "reasonably calculated, un-der all the circumstances, to apprise interested parties of the pen-dency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. The notice must "reasona-bly . . . convey the required information" and it "must afford a rea-sonable time for those interested" to object or comply with the pol-icy or regulation. *See id.* Due process, however, "does not require that an interested party actually receive notice of the [matter], nor does it demand that the [g]overnment employ the best or most re-liable means of ensuring notice." *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012). In other words, "failure of notice in a specific case does not establish the inadequacy of the attempted notice; in that sense, the constitutionality of a particular procedure

inmates—and is therefore not a prison regulation subject to the standard set out in *Sandin*.

for notice is assessed *ex ante*, rather than *post hoc*." *Jones v. Flowers*, 547 U.S. 220, 231 (2006).

Chaplains Aronofsky and Jordan placed an electronic announcement regarding the 45-day Passover registration policy on the homepage of the computer kiosk at the Jail. The notice, in a size comparable to other text on the screen, read as follows:

### Chaplain's Office - Passover Information

Passover will begin Friday, March 30, 2018—Saturday, April 7, 2018. If you would like to participate, please request[ ] that your name is added to the list for services. All requests must be placed by Wednesday, February 14, 2018.

D.E. 23 at 11.

The announcement is clear about the Jail's policy requiring inmates to request participation in Passover by the specified deadline, and thus "reasonably . . . convey[ed] the required information[.]" *See Mullane*, 339 U.S. at 314. And it was posted on the homepage of the computer kiosk that inmates, including Mr. Dorman, used to communicate with staff at the Jail. Absent any allegations that the kiosk was inaccessible or did not work, posting the announcement on the kiosk homepage was a "reasonably calculated" method of notifying inmates of the Passover registration deadline. *See id.* Indeed, Mr. Dorman used the kiosk to request inclusion in the 2017 and 2018 Passover services, to communicate

with Chaplains Aronofsky and Jordan about his requests, and to file his 2018 grievance.

Due process, of course, also required that the notice "afford a reasonable time" for Mr. Dorman and other inmates to object to or comply with the Passover registration requirement. *See id.* The complaint does not indicate when the notice was first posted on the kiosk homepage, and we acknowledge that a tardy placement of the notice could be constitutionally deficient. But Mr. Dorman does not claim that the notice was untimely, and courts generally do not explore liability theories not presented by the party seeking relief. *See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011).

Mr. Dorman contends that the Passover registration deadline should have been "printed and posted around the kiosk like other important information" and that Chaplains Aronofsky and Jordan should have personally notified him of the Passover registration requirement "either because they knew he was Jewish or because he had attended Passover in the past." Appellant's Br. at 34. We disagree for several reasons.

First, there are no allegations in the complaint that important announcements at the Jail were routinely printed and posted around the kiosk. Although we must accept Mr. Dorman's allegations as true at this stage of the proceeding, his complaint—even when read liberally—is silent about how other similar announcements or notices were communicated. Mr. Dorman did claim that he "was unaware of such posting on the kiosk as all

notifications that are important are printed and placed around the kiosk[,]" D.E. 55 at ¶ 3, but that assertion was contained in his response to the motion to dismiss. Understanding that Mr. Dorman was proceeding *pro se*, "facts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) (citation omitted). *Cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Second, "[n]otice comes in many shapes and sizes[.]" *Grayden v. Rhodes*, 345 F.3d 1225, 1238 n.17 (11th Cir. 2003). Printing and posting the notice around the kiosk along with using the kiosk homepage may have been a better (or best) practice, but absent appropriate allegations in the complaint we cannot say that it was constitutionally necessary. "[G]overnments are not required to make the 'best' efforts, but only those that are 'reasonably calculated' to provide proper notice." *Cuvillier v. Rockdale Cnty.*, 390 F.3d 1336, 1339 n.8 (11th Cir. 2004). *Cf. Greene v. Lindsey*, 456 U.S. 444, 453 (1982) (noting, on a summary judgment record, that printed notices posted on the doors of apartments "were 'not infrequently' removed by children or other tenants before they could have their intended effect").

Third, without additional allegations the Due Process Clause did not require personal notice to Mr. Dorman of the Passover registration requirement. Actual receipt of notice is not the

touchstone of due process, see Dusenbery, 534 U.S. at 169–70, and based on the allegations in complaint the use of the kiosk homepage by Chaplains Aronofsky and Jordan was reasonably calculated to reach interested inmates at the Jail. The kiosk, as best we can tell from the complaint, was accessible to all. This is not a case like Reeves v. Pettcox, 19 F.3d 1060, 1061 (5th Cir. 1994), where inmates were not given copies of the rules governing solitary confinement and were not provided a "meaningful opportunity" to read the bulletin board where the rules were posted.

Mr. Dorman's reliance on *Mullane* for the proposition that he should have been personally notified is misguided. *Mullane* concerned what sort of notice a trustee of a common trust fund owed to in-state and out-of-state beneficiaries of the trust. In that case, the trustee published notice of a potential settlement in a local newspaper in accordance with the statutory requirements set out in New York law. See Mullane, 339 U.S. at 307–310. The question before the Supreme Court was whether that publication—though statutorily sufficient—was constitutionally deficient. The Court determined that publication in a local newspaper, which did not even list the names of the beneficiaries, left too much to chance and made the *odds* of actual notice to beneficiaries very unlikely. See id. at 315–316. The trustee failed to make a "serious effort to inform" those beneficiaries by opting for a method of notification that was not "reasonably calculated, under . . . the circumstances," and therefore was constitutionally inadequate. See id. at 314, 318.

The circumstances here are very different.  Mr. Dorman is an inmate, not a beneficiary to a trust.  The notice of the registration deadline was not published in a local newspaper, but rather posted on the homepage of a kiosk that inmates use regularly for their communications with Jail staff.  And this method of notification was more than a "mere gesture."  *See id.* at 315.  It was "a reliable means of acquainting interested parties of the fact that" they need to sign up for Passover by a certain date.  *See id.*  This is not one of those rare cases where due process might require actual delivery of notice.  *Cf. Dusenbery*, 534 U.S. at 171 (rejecting inmate's argument that the government was required to assure delivery of forfeiture to his cell, and noting that "our cases have never required actual notice").

## V

We affirm the district court's dismissal of Mr. Dorman's complaint.

**AFFIRMED.**